**PARK CITIES CORPORATION,**
**Appellant,**

v.

**D. Harold BYRD et al., Appellees.**

**No. 7685.**

Court of Civil Appeals of Texas,
Beaumont.

April 10, 1975.

Rehearing Denied May 8, 1975.

Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellant.

Turner, Rodgers, Sailers, Jordan & Calloway, Dallas, Martha E. Smiley, Austin, for appellees.

KEITH, Justice.

Park Cities, a defendant below, appeals from a declaratory judgment entered after a non-jury trial in a suit brought by the executors of the estate of Mattie Caruth Byrd. Plaintiffs sought to determine the correct method of winding up a limited partnership between deceased, a general partner, and Park Cities, a limited partner, in Mattie Caruth Byrd, Ltd. We will refer to the executors as plaintiffs, the deceased as Mrs. Byrd, the defendant as PCC, and the limited partnership simply as "Limited."

The trial court filed extensive findings of fact and conclusions of law; and, after a careful review of the evidence adduced upon the hearing, we are of the opinion that such findings have support in the record and our resume of the facts is taken largely therefrom.

Under the agreement, which was carefully tailored to comply with the provisions of Vernon's Tex.Rev.Civ.Stat.Ann. art.

6132a (1970), PCC's contribution to the capital of Limited was $100 and Mrs. Byrd was required to "contribute her financial resources, skill, efforts and abilities to the mutual benefit of the partnership" but no fixed sum was specified in the agreement. Early in the venture, Mrs. Byrd began making loans to Limited, each being evidenced by a promissory note with the proceeds being expended in the venture. At the time of her death (on February 12, 1972), the total face amount of the series of notes was $1,153,727.48, with accrued interest due amounting to $278,100.00. During 1964 and 1965, she made contributions to capital of Limited in the amount of $88,833.47.

The books of the partnership were audited each year by the national accounting firm now known as Coopers & Lybrand, and a "clean" certificate was given on all except the last statement covering the period January 1–February 15, 1972, after which the controversy now before us developed. The accountant's reports showed that the loans were payable to Mrs. Byrd, and the amounts and accrued interest thereon were shown as liabilities of the partnership.

Each of these reports also showed very clearly that Mrs. Byrd had used the depreciation allowance upon the partnership properties as a credit upon her personal income tax obligations. The total depreciation taken during the life of the partnership amounted to $2,093,851. We quote the "net loss" provision of Art. V. of the agreement in the margin,[1] along with the trial court's finding of fact No. 13.[2]

---

1. "The parties further agree that for tax purposes they will share all net losses of the partnership according to actual losses suffered by each party, and it is further expressly agreed that Park Cities Corporation shall not be financially responsible for any of the losses of the partnership in excess of its capital contribution [$100] as herein elsewhere set forth."

2. Finding of fact No. 13: "For Federal Income Tax purposes the Limited Partnership has consistently and continuously, since construction of the Apartment Project made the basis of this suit, computed depreciation upon buildings upon an accelerated basis known as the declining balance method, at a rate of 200% of the straight-line rate over the estimated useful lives of the assets [and such depreciation was reflected upon the tax returns in evidence]."

Extensive documentary evidence was offered by stipulation of the parties but only one witness, an accountant employed by PCC, gave oral testimony at the trial.[3] The trial court's judgment declared that the series of promissory notes were "bona fide loans" payable in favor of the plaintiffs (executors of Mrs. Byrd's estate) upon the winding up of the affairs of the limited partnership. It also declared that, in winding up the affairs, market value of the capital assets, rather than book value (see footnote 6, infra), should be used in determining the distributable shares of the parties and that the face of the series of notes plus accrued interest should be paid to Mrs. Byrd's estate before making distribution of the remainder, if any. If there was a net loss, it was declared that such was an obligation of Mrs. Byrd's estate and no part thereof was an obligation of PCC. Thus, the declaration of the rights of the parties upon dissolution followed the provisions of the partnership agreement (Art. IX) and § 40(b) of Tex.Rev.Civ. Stat.Ann. art. 6132b (1970).

The judgment denied all relief sought by PCC which tendered the question of whether the notes were valid debts of the partnership or should be treated as contributions of capital required of Mrs. Byrd under the terms of the agreement.

PCC's first two points tendered the fundamental issue which it has urged throughout the litigation: (1) the trial court erred in failing to conclude that the debit balance or deficit in the general partner's capital account is an asset of the partnership; and (2) the court erred in failing to declare the liability of the general partner to the partnership for the ultimate debit balance or

deficit in her capital account. We disagree and each of the points of error is overruled for the reasons now to be stated.[4]

It stands undisputed in our record, and the court so found, that "[n]one of the 'capital deficit' attributed to Mrs. Byrd's 'capital account' results from any withdrawal by, or distribution to Mrs. Byrd." Instead, it was brought about by the depreciation allowance taken in accordance with the terms of the agreement between the parties. Thus, the only Texas case cited by PCC, Conrad v. Judson, 465 S.W.2d 819 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.), is inapposite. Conrad did not involve depreciation; instead, the court noted that Conrad "withdrew sums largely in excess of his share of earnings and profits and caused these salary items to be credited to his account, without the semblance of any agreement on the part of appellees, or either of them, in order to convert the overdraft in his account to a credit balance." (465 S.W.2d at 824) These unauthorized withdrawals were properly held to be in the nature of a debt and accountable in the dissolution.

■ The plaintiffs' answer to the argument of PCC meets with our approval and is adopted:

"The fatal fallacy in the Appellant's [PCC] attempted analogy between a capital 'deficit' resulting from cash withdrawals, and a capital 'deficit' resulting from depreciation is the Appellant's failure to recognize that closing the non-cash depreciation from the profit and loss account to the capital account is not in fact a withdrawal. No 'debt' is creat-

3. He testified that the principal executive officer of PCC had reviewed the reports of the accountants and that the executive fully understood the statements but never made any complaint or protest as to the accounting procedures being used to reflect the affairs of the partnership.

4. Although the parties have cited us to many texts upon accounting, tax cases from the

United States Tax Court, etc., we will treat the questions presented on this appeal within the framework of substantive state law. It is unlikely that our excursion into the esoteric field of the federal law of taxation and the tax advantages or disadvantages of a general partner vis-a-vis a limited partner would be accepted or appreciated by the federal government or the Internal Revenue Service.

ed by depreciation. Recognition of this distinction distinguishes every one of the authorities cited by Appellant."

In Guthrie v. Foster, 256 Ky. 753, 76 S. W.2d 927, 932 (1934) [cited in 68 C.J.S. Partnership § 437g, at p. 984 (1950)], the trial court, in arriving at the value of the partnership assets, eliminated the bookkeeping item of depreciation. In approving this action, the Kentucky court said:

"Inasmuch as the fixtures were on hand at the death of Foster, and the $36,332.-68 depreciation thereof was arrived at by mere bookkeeping solely for income tax purposes, it is scarcely debatable the court properly eliminated this item."

The bookkeeping item reflecting the depreciation allowance upon the partnership property did not create a debt and the trial court did not err in so holding. Finding no merit in the first two points of error, each is overruled.

By point three, PCC contends that the trial court erred in finding that the sums advanced by Mrs. Byrd to the limited partnership were loans instead of capital contributions; point four asserts that the court improperly awarded interest upon the loans.

The partnership agreement provided that the general partner "shall have the sole and exclusive control of the management of the business of the partnership and shall devote such part of her time, attention, talent, capital, credit and business capacity to the business of the partnership as is necessary for its successful operation." The agreement did *not* require Mrs. Byrd to contribute a fixed or stated dollar amount of capital contribution; and, although granting her sole and exclusive control of the management, did not contain any provision prohibiting the borrowing of funds.

■ Upon a complete record, the trial court found as a fact that the loans so made by Mrs. Byrd were actual "bona fide loans made to the Limited Partnership by

the General Partner, and are not capital contributions." Whether an advance by a partner is a loan or an added contribution to the capital of the firm is a question of fact. Crane & Bromberg, Law of Partnership § 65(a) at 369–370 (1968).

■ The finding being supported by competent evidence is binding upon the reviewing court and will not be disturbed upon appeal. Hensley v. City Bank and Trust Company, 495 S.W.2d 282, 284 (Tex.Civ.App.—Tyler 1973, writ ref'd n. r. e.), and cases therein cited. See also, Nathan v. Hudson, 376 S.W.2d 856, 862 (Tex.Civ.App.—Dallas 1964, writ ref'd n. r. e.); Minchen v. Van Trease, 425 S.W. 2d 435, 436 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.).

■ It is neither illegal nor improper for a partner to make a loan to a partnership of which he is a member. As stated in 60 Am.Jur.2d, Partnership § 309 at 204 (1972):

"Under the Uniform Partnership Act [Tex.Rev.Civ.Stat.Ann. art. 6132b, § 40(b) II (1970)], the second rank in order of payment is for those liabilities owing to partners other than for capital and profits. This provision is in accord with the general rule that in the absence of an agreement which will determine rights as to advances, each partner is a creditor of the firm as to money loaned it and has a right to repayment after the debts to other creditors have been met. The payment of interest on advances apparently also falls within the second rank in order of payment if there is an express or implied agreement to pay interest."

See also, Johnson v. Braden, 286 S.W.2d 671, 672 (Tex.Civ.App.—San Antonio 1956, no writ), holding: "The assets of the partnership should have been liquidated and used to discharge debts, *advances* and charges, and the surplus, if any, should then have been divided." (emphasis supplied)

In Moore v. Steele, 67 Tex. 435, 3 S.W. 448, 450 (1887), Judge Gaines held that a partner "who has advanced money to the firm beyond his share of the capital is entitled to retain the amount due him before the other partners are entitled to recover any of the assets." See also, Annotation, 6 A.L.R. 160, 161 (1920).

In Crane & Bromberg, supra (§ 65 at 369), the authors state:

"Before profits are shared on dissolution, payments must be made to creditors, and partners must be *repaid their advances* and their capital contributions. Presumably the partner making advances is entitled to interest thereon until paid." (emphasis supplied)

In a footnote, it is said:

"U.P.A. § 40(b) sets the priorities of distribution in this order. Section 18(a) reinforces the rights to receive them. The terminology of the two sections is not identical but presumably the significance is the same. Thus, 'advances' in § 18(a) are equivalent to 'those owing to partners other than for capital and profits' in § 40(b)(II)."

■ In our construction of the two sections we hold that "the significance is the same" and, in each event, the partner is entitled to be repaid the advances, with interest, before payments are made for those owing to partners in respect of capital or in respect of profits as provided in § 40(b)(III) and (IV).

In our research we have found but one Texas case approving the payment of interest upon an advance made to a partnership by one of its members, Reese v. Carey Bros., 286 S.W. 307, 314 (Tex.Civ.App.—Amarillo 1926, writ dism.), and none to the contrary. In *Reese,* the court adopted the general rule, saying:

"As a general rule, unless there is an agreement to allow interest, none is allowed in [on] contributions to the capital, because the partner must rely upon the proceeds of the business to compensate him for his investment; but, if the monies paid or advanced for the use of the firm are, in effect, loans, interest upon such advances is allowed, though there is no express agreement therefor."

See, also, Annotation, 66 A.L.R. 3, 19, Interest—Allowance to Partner (1930), where a number of out-of-state cases are cited for the same holding.

Points three and four are overruled.

We quote PCC's fifth and final point of error:

The court erred in holding that the limited partner was estopped to assert that the general partner's so-called loans were in fact capital contributions.

Conclusion of law No. 3, relating to the loans, began with these words: "For each of the following reasons, each of which by itself is alone sufficient, the loans made by Mrs. Mattie Caruth Byrd in the total aggregate principal amount of $1,153,727.48 are recognized as actual, valid bona fide loans repayable to the Limited [sic] Partner under the specific terms hereinafter set forth:

"[then follow three reasons, the latter two of which are quoted in the margin.]"[5]

As noted above, PCC challenges only the second "reason," making no mention of the third.

■ Assuming, arguendo, that all of the elements of an estoppel in pais [as set out in Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, 932 (1952)] are not present in this case, it is well settled that a

---

5. "Reasons" were said to be: "(2) The consistent treatment of said transactions as loans during the lifetime of Mrs. Byrd, without protest from the Limited Partner estops the Limited Partner from contending otherwise; and, (3) Treatment of said transactions as capital contributions rather than as loans would result in unjust enrichment to the Limited Partner under the circumstances of this case."

correct judgment based upon an erroneous conclusion of law will be affirmed. Payne v. Bracken, 131 Tex. 394, 115 S.W.2d 903, 905 (1938); Construction and General Labor Union v. Stephenson, 148 Tex. 434, 225 S.W.2d 958, 960 (1950). For additional authorities see 4 Texas Digest, Appeal & Error, ▇▇▇▇ at 224 et seq. (1967).

▇ Remembering the trial court's conclusion that PCC would be unjustly enriched if the notes and interest were held to be capital contributions, we pause to note that all PCC ever put into the venture was the nominal sum of $100. Had PCC been successful in having the loans and interest (aggregating a total of $1,431,827.-48) treated as a part of the capital, it would have received one-half thereof *and* would have shared equally in the enhanced *market* value of the apartment project.[6]

This windfall upon its slight investment, with the general partner putting up all the money and taking all of the risks of the venture, was not one within the reasonable contemplation of the parties—and the trial court so held.

Moreover, plaintiffs specially pleaded ratification of the treatment of the loans in the annual reports.[7] The trial court found, with an abundance of supporting evidence, that PCC and its executive officers had full access to and actual knowledge of the financial records and statements of Limited which showed the loans and, despite such knowledge, PCC never challenged "the correctness of the treatment" of such advances as loans rather than as additional capital contributions.

▇ We have noted earlier that the partnership agreement was silent as to the power of Mrs. Byrd to borrow money; but, assuming for the purpose of argument, that she was without authority to execute the notes in question payable to herself, the silence of the limited partner, *with full knowledge of such facts and without protest to such action,* amounted in law to a ratification thereof.

▇ The unauthorized acts of a partner may be ratified even if such acts result in the imposition of tortious liability. K & G Oil Tool & Service Co. v. G & G Fishing Tool Service, 158 Tex. 594, 314 S.W.2d 782, 793 (1958); Kelsey-Seybold Clinic v. Maclay, 466 S.W.2d 716, 719 (Tex.1971). In contract cases, such ratification may be inferred from silence on the part of one partner. Tom v. First Nat. Bank of Midland, 104 S.W.2d 130, 133 (Tex.Civ.App.—El Paso 1937, writ dism.); 68 C.J.S. Partnership § 173, at p. 626 (1950); 60 Am.Jur.2d, Partnership § 134 at 61 (1972).

We are of the opinion that the long and continued silence of PCC, with full knowledge of the manner in which the partnership affairs were being conducted, amounted, in law, to a ratification of the action of Mrs. Byrd in treating the advances as loans and not as contributions to the capital of the partnership. Point five is overruled.

After a careful review of the entire record, we are of the opinion that the judgment of the trial court was correct and it is therefore, affirmed.

---

6. In arriving at the value of the partnership assets, "book values are simply arbitrary values and cannot be used." Cauble v. Handler, 503 S.W.2d 362, 364 (Tex.Civ.App.— Fort Worth 1973, writ ref'd n. r. e.). Indeed, as was said in Johnson v. Braden, supra (286 S.W.2d at 672), "[T]he market value of the firm assets should have been used in computing values."

7. Paragraph VIII of plaintiffs' answer to the counter-claim of PCC pleaded ratification in this language: "Plaintiffs will show that the Defendant [PCC] has ratified the treatment of the transactions made the basis of this suit as loans by knowingly accepting the benefits thereof and voicing no objection thereto during the lifetime of the general partner."