**PARK CITIES CORPORATION,**
Petitioner,

v.

**D. Harold BYRD et al., Respondents.**

No. B–5369.

Supreme Court of Texas.

Feb. 18, 1976.
Rehearing Denied March 24, 1976.

Jackson, Walker, Winstead, Cantwell & Miller, Vester T. Hughes, Jr., and Sam J. Dealey, Dallas, for petitioner.

Turner, Rodgers, Sailers, Jordan & Calloway, John H. McElhaney, Dallas, John L. Hill, Atty. Gen., Martha E. Smiley, Asst. Atty. Gen., Austin, for respondents.

McGEE, Justice.

This suit was brought by the executors of the estate of Mattie Caruth Byrd against Park Cities Corporation. On September 30, 1961 Mrs. Byrd and Park Cities Corporation entered into a limited partnership agreement for the purpose of building, owning

and operating a large apartment complex in Dallas, Texas. The limited partnership, called Mattie Caruth Byrd Limited, was to exist until September 30, 2011 unless otherwise terminated under the provisions of the agreement. It was agreed that Mrs. Byrd was to be the managing general partner and Park Cities was to be a limited partner. No additional partners ever existed. On February 12, 1972 Mrs. Byrd died, which effectively dissolved the limited partnership as of that date pursuant to their agreement. Thereafter, a dispute arose between the executors of Mrs. Byrd's estate and Park Cities Corporation. The executors of Mrs. Byrd's estate brought this suit as an action for declaratory judgment to determine the correct method of winding up the limited partnership previously existent between Mrs. Byrd and Park Cities. In a non-jury trial, the trial court held on all points favorably to the position taken by the executors of Mrs. Byrd's estate and denied all relief sought by Park Cities. The court of civil appeals affirmed the judgment of the trial court. 522 S.W.2d 572. The only problem to be resolved is whether or not the $1,987,344 deficit in Mrs. Byrd's capital account, created mainly by annual allocation of depreciation losses, is to be treated as an asset of the partnership, and as a liability of Mrs. Byrd. The court of civil appeals held that the deficit was not an asset of the partnership. We disagree.

The articles of agreement naming Mrs. Byrd as general partner and Park Cities as limited partner was carefully tailored to comply with the provisions of Tex.Rev.Civ. Stat.Ann. art. 6132a (1970). Park Cities was required to make a capital contribution of $100 and Mrs. Byrd was required to contribute her financial resources, skill, efforts and abilities to the mutual benefit of the partnership.

Park Cities Corporation was wholly owned by the Mattie Caruth Byrd Trust and the W. W. Caruth, Jr. Trust. The Mattie Caruth Byrd Trust benefited the general partner during her lifetime while the W. W. Caruth, Jr. Trust benefited her brother during his lifetime. Each trust provided a remainder interest to the children of the lifetime beneficiary.

The books of the partnership were audited each year by a national accounting firm and pursuant to Article VI of the partnership agreement, the books of the partnership were to be kept in accordance with generally accepted partnership accounting principles and the net income, profit or loss, and all items of income or expense were to be determined in accordance therewith. Other governing articles of agreement signed by the parties which are crucial and controlling of our ultimate decision, reveal the following:

"V. The parties hereby agree to divide the net income of the partnership at least annually and to share same in the percentages set forth opposite their names below:

| | |
|---|---|
| Mattie Caruth Byrd, General Partner | 50% |
| Park Cities Corporation, Limited Partner | 50% |

"And in the event the Limited Partner's interest in the partnership is transferred, its successor in interest shall be entitled to the share set forth opposite the Limited Partner's name.

"The parties further agree that for tax purposes they will share all net losses of the partnership according to the actual losses suffered by each party, and it is further expressly agreed that Park Cities Corporation shall not be financially responsible for any of the losses of the partnership in excess of its capital contribution as herein elsewhere set forth.

" .   .   .

"X. The Limited Partner shall not be responsible for the debts of the partnership in excess of a capital contribution as herein provided *and any losses shall be borne entirely by the General Partner, Mattie Caruth Byrd.*

" .   .   .

"VIII. In the event it is desired and the parties enter into an agreement to sell the property, or on the retirement, death or insanity of the General Partner, the partnership shall terminate *and a final accounting and distribution be made as provided by law; . . .*" [Emphasis added]

As per article VIII, upon the death of Mrs. Byrd on February 12, 1972 the partnership was dissolved and under article IX the assets of the partnership were to be distributed in the following manner and in the priority set forth:

"1. All charges, debts and obligations of the partnership shall be paid.

"2. The contribution of the Limited Partner shall be returned to it.

"3. The parties hereto shall each own and hold and be entitled to *receive the percentages of the remaining partnership assets* set out opposite their names below:

Mattie Caruth Byrd,
General Partner        50%
Park Cities Corporation,
Limited Partner        50%

"And in the event of the transfer of the interest of the Limited Partner, its successor in interest shall be entitled to the share set forth opposite the Limited Partner's name.

". . ." [Emphasis added].

Over the years, due to the negative cash flow position of Limited[1] in its ownership and management of the University Gardens apartment complex, Mrs. Byrd extended a number of advances to Limited in the form of loans in order that the partnership could continue in operation by meeting its pressing financial obligations. The amount of the loans she made to Limited totalled $1,431,827 inclusive of interest. Mrs. Byrd also made contributions to the capital of Limited in 1964 and 1965 in the amount of $88,833.47. There was a controversy in the courts below as to whether some of the monies expended by Mrs. Byrd throughout the life of Limited, and evidenced by promissory notes were in reality "loans" to Limited or whether they were "unsecured capital contributions." The lower courts held these monetary extensions to be "loans" and as such subject to full repayment to her by Limited upon dissolution. As a result, an issue below was also whether the debit balance in Mrs. Byrd's capital account should be offset against these "loans" to the partnership before any final cash distribution was made as between the partners. The lower court holdings on the points relative to the loans are not before us for review. We are concerned only with the parties' arguments relative to the questions presented which involve the deficit evident in Mrs. Byrd's capital account.

The key to the present dispute involves the $1,987,344 capital deficit evident in Mrs. Byrd's capital account as substantially created by depreciation. The partnership computed depreciation upon its buildings on an accelerated basis known as the declining balance method, then allowed at a rate of 200 percent of the straight line rate over the estimated useful lives of the assets. The controversial deficit of nearly $2,000,000 came into existence in the following manner. As the articles of agreement earlier set out reveal, the parties agreed that "for tax purposes they will share all net losses of the partnership according to the actual losses suffered by each party." In order to clarify the amount of loss each party was intended to suffer, the agreement further provided, "Park Cities Corporation shall not be financially responsible for any of the losses of the partnership in excess of its capital contribution" which was set at $100. Thus, it seems clear that when taken together, these two provisions reveal that Mrs. Byrd as the general partner was to be financially responsible for all

---

1. Throughout this opinion we will refer to the Mattie Caruth Byrd Limited Partnership as "Limited," the general partner as "Mrs. Byrd," the executors of Mrs. Byrd's estate as "Respondents," and the limited partner as "Park Cities" or "Petitioner."

losses incurred by the partnership in excess of the initial capital contribution of $100 made by Park Cities. It was this allocation of 100 percent of the depreciation losses to Mrs. Byrd's capital account that created the controversy now before us. Each of the accountant's reports showed clearly that Mrs. Byrd had used the depreciation allowance upon the partnership properties as a credit upon her personal income tax obligations to the extent allowed by law.

The dispute before us has resolved itself into two central points that Park Cities as petitioner has urged throughout the litigation. Park Cities maintains that the courts below erred in failing to conclude that the debit balance or deficit in Mrs. Byrd's capital account is an asset of the partnership. Further, Park Cities urges as error the failure of the courts below to declare that Mrs. Byrd was liable to the partnership for this $1,987,344 ultimate debit balance or deficit in her capital account. Cumulative losses on the books of the partnership in the amount of $2,076,177 were debited to Mrs. Byrd's capital account. She had made capital contributions of $88,833 in 1964 and 1965. This left Mrs. Byrd with the capital deficit in controversy totaling $1,987,344 as of February 12, 1972. Both parties' arguments are based upon the theory that the final accumulated depreciation charged to Mrs. Byrd's capital account exceeded $1,987,344 and thus depreciation alone fully accounts for the controversial deficit. The depreciation allocation is the major concern of the parties here since the court of civil appeals has apparently held that the debit balance in a partner's capital account is to be disregarded if an approximately corresponding amount of depreciation has been charged against the partnership assets and income.[2]

If the deficit created by the allocation of all of the depreciation charges to Mrs.

Byrd's capital account is to be treated as an asset, her estate will presently be liable to the partnership for the $1,987,344 deficit. If under the law, and more particularly under the agreement between the partners, this capital deficit is held not to be an asset of the partnership, the estate of Mrs. Byrd will not be subjected to liability for payment of that amount into the limited partnership now being wound up. Park Cities contends that the capital deficit is definitely an asset under their agreement with Mrs. Byrd, and consequently, she should be required to suffer the actual present financial loss for the entire sum. Under their theory, Mrs. Byrd's estate would be liable to contribute to the capital of the partnership an amount sufficient to bring the debit balance of her capital account to zero.

It is also evident that the agreement provides for an equal division of the partnership assets upon dissolution. Thus, throughout this controversy the executors of Mrs. Byrd's estate have argued that Park Cities by its attempt to have Mrs. Byrd's capital deficit declared an asset, has simply been trying to maximize its final distributive share by increasing the scope of the assets available for distribution. The trial court and the court of civil appeals disagreed with the arguments forwarded by Park Cities and held that the closing of non-case depreciation from the profit and loss account to the capital account of the general partner is not something for which the general partner should be liable.

It has been held that upon dissolution, a partner whose capital account evidences a deficit is required to make a contribution to the capital of the partnership in an amount equal to the deficit. *Conrad v. Judson*, 465 S.W.2d 819 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e., *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 582 (1972)).

**2.** Cumulative net losses on the books of the partnership of $2,076,177 were debited to Mrs. Byrd's account whereas her final capital deficit totaled $1,987,344. Thus, as stated by respondents in their brief, the final accumulated depreciation exceeds and fully accounts for the deficit. We analyze the question strictly from this depreciation-effect point of view. The court of civil appeals in essence maintains that in this case, a capital deficit, created solely by depreciation, is not an asset of the partnership.

*See,* Tex.Rev.Civ.Stat.Ann. art. 6132b § 40. The executors of Mrs. Byrd's estate, as respondents, argue that this principle can have no application to the present situation in which depreciation charges fully account for Mrs. Byrd's capital deficit. They argue that the general partner's capital account was merely a "receptacle or repository" to which such items as "non-cash depreciation" were to be allocated for "bookkeeping purposes." They maintain that unlike a cash withdrawal situation, the present factual pattern reveals that Mrs. Byrd never "withdrew" anything from the partnership. They argue that none of the capital deficit involved in this suit reflects any "withdrawal" by Mrs. Byrd.

Park Cities, as petitioner, contends that Mrs. Byrd indeed received a valuable benefit in the form of this non-cash depreciation allocation and that she should be required to repay this amount into the partnership as it constituted an asset of the partnership. One portion of their argument is that due to the taxation benefits Mrs. Byrd realized by having all of the depreciation losses allocated to her capital account, that as between partners, this non-cash depreciation figure represents an item of clear economic value. They maintain that their interests were affected by such a loss allocation agreement and the deficit is not simply evidence of a mere bookkeeping item. Thus, they contend that Mrs. Byrd fully intended to bear all these annual depreciation losses as is clearly evident under article X of their agreement and that it was to her distinct advantage to do so. Park Cities

further argues that as the limited partner they gave up the right to utilize their one-half of these depreciation losses, and therefore surrendered the right to realization of the annual tax benefits such losses would allow. This was allegedly done in sole reliance upon Mrs. Byrd's agreement to suffer an equivalent dollar financial loss upon dissolution of the partnership in the future which presently amounts to almost $2,000,000.

At the time of dissolution the limited partner's capital account had a zero balance and Mrs. Byrd's capital account revealed this $1,987,344 capital deficit. The agreement of the parties is to be controlling of our decision and we shall construe and interpret their agreement pursuant to the applicable law of contracts. *See, City of Pinehurst v. Spooner Addition Water Company,* 432 S.W.2d 515 (Tex.1968). We look to the Texas Uniform Partnership Act for guidance only when the partnership agreement is silent. In this case we shall often consider it only as an interpretive aid. Section 40 of the Texas Uniform Partnership Act reveals that a partner's capital deficit may often be considered to be a partnership asset. Section 40(a) states that "[t]he assets of the partnership are: (I) The partnership property, (II) *The contributions of the partners necessary for the payment of all the liabilities* specified in clause (b) of this paragraph." [3] [Emphasis added].

Thus, it is clear that the assets of the partnership are to be utilized in paying off the liabilities of the partnership.[4] Fur-

---

**3.** Texas Uniform Partnership Act, Tex.Rev. Civ.Stat.Ann. art. 6132b § 6(2) (1970) states that the Uniform Partnership Act shall apply to limited partnerships except insofar as the statutes relating to such limited partnerships are inconsistent.
Article 6132b, Section 40(b) states:

"(b) The liabilities of the partnership shall rank in order of payment, as follows:

"I. Those owing to creditors other than partners,

"II. Those owing to partners other than for capital and profits,

"III. Those owing to partners in respect of capital,

"IV. Those owing to partners in respect of profits."

**4.** *See also,* Texas Uniform Limited Partnership Act, Tex.Rev.Civ.Stat.Ann. art. 6132a, § 24(a) (1970). The comments to § 40 of the Texas Uniform Partnership Act reveal that Section 40(a) "includes as partnership assets the contributions from the partners necessary to meet partnership liabilities.

ther, Section 40(d) also states that partners shall contribute the amount necessary to satisfy the liabilities as set out in Section 18(a) of the Act. Section 18(1)(a) of the Texas Uniform Partnership Act reveals that each partner must contribute toward the partnership losses, "whether of capital or otherwise," according to his share in the profits unless varied by an agreement such as in the present controversy. Park Cities was not liable for any losses in excess of its capital contribution. Aside from the Partnership Act, under the present agreement, the depreciation of partnership assets in excess of income was a loss to which partners needed to contribute according to the loss ratios they agreed upon. Thus, Mrs. Byrd was required upon dissolution to contribute toward all of the partnership's losses. *See, Cortez v. Corsi*, 513 S.W.2d 648 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.).[5]

In *Conrad v. Judson*, 465 S.W.2d 819 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e., *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 582 (1972)), the court held Conrad's estate to be liable for a capital deficit of $40,298.12. Conrad had withdrawn substantially more cash than had the other partners and thus, Conrad's capital account was charged with each withdrawal. The court held that upon liquidation the surviving partner was entitled to a judgment against Conrad's estate in the amount of $40,298.12. Such amount was to be held for the benefit of the partnership. In the present controversy Park Cities argues that analogously it occupies the position of the surviving partner and Mrs. Byrd's executors occupy the position of Conrad's executors. Nevertheless, Mrs. Byrd's executors and the court of civil appeals below in the present controversy attempted to distinguish *Conrad* on the basis of *how* that capital deficit was created. The court below stated that *Conrad* was inapposite:[6]

"*Conrad* did not involve depreciation; instead, the court noted that Conrad 'withdrew sums largely in excess of his share of earnings and profits and caused these salary items to be credited to his account, without the semblance of any agreement on the part of appellees, or either of them, in order to convert the overdraft in his account to a credit balance.' (465 S.W.2d at 824) These unauthorized withdrawals were properly held to be in the nature of a debt and accountable in the dissolution." 522 S.W.2d 572, 575.

■ The trial court and court of civil appeals in deciding the present case correctly stated that none of the capital deficit attributed to Mrs. Byrd's capital account resulted from any withdrawal by, or distribution to, Mrs. Byrd. Her capital deficit was brought about by the depreciation allocation taken in accordance with the terms of the agreement entered into between her and Park Cities. The court below adopted Mrs. Byrd's executors' argument that closing the non-cash depreciation from the profit and loss account to the capital account is not in fact a withdrawal and that she therefore was under no obligation to pay this amount back into the partnership upon dissolution. We believe that under the agreement, this capital deficiency created a valid claim of the partnership against Mrs. Byrd. This is because a capital deficit may be created by the charging of losses against a partner's capital account as well as by the withdrawal of funds by a partner. *See, Cortez v. Corsi*, 513 S.W.2d 648 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n.

This, in effect makes the assets equal the liabilities (except where all the partners are insolvent)."

5. The *Cortez* case discusses the liability of individual partners to another partner for capital deficits created as analyzed under Section 18(1)(a) of the Texas Uniform Partnership Act.

6. For a Texas case remotely analogous to our present controversy *see, Bivins v. Proctor*, 125 Tex. 137, 80 S.W.2d 307 (1935). *See also, Essay v. Essay*, 180 Neb. 47, 141 N.W.2d 436 (Neb.1966); *Kennedy v. Yost*, 32 Del.Ch. 386, 88 A.2d 297 (Del.Ch.1952); *Greiss v. Platzer*, 131 N.J.Eq. 160, 24 A.2d 408 (N.J.Eq.1942).

r. e.). Mrs. Byrd's capital account was not merely a receptacle or a repository to which such items as non-cash depreciation were to be allocated for bookkeeping purposes as the respondents contend. It is obvious from a practical standpoint that the allocation of all of the partnership losses to the capital account of Mrs. Byrd was intended to have, and did result in, beneficial financial consequences to her.

It seems that these parties would not intend that Mrs. Byrd should receive the entire tax benefit from the nearly $2,000,-000 in partnership losses and never be required to suffer any actual financial loss as a result of those allocations. Park Cities could have made use of some of these losses to offset its taxation burden had they not agreed to allow Mrs. Byrd to make full use of this benefit. Mrs. Byrd made use of a potentially deductible loss which was an economic benefit to the partner to whom it was allocated. Due to the nature of the agreement entered into in this particular case, the liability of Mrs. Byrd because of her capital deficit is founded upon the fact that the deficit exists and not upon what created this particular deficit.

█ What is made clear in this case is the fact that Park Cities was to receive a potentially substantial benefit from a seemingly meager investment. As the limited partner, Park Cities was not liable for any of the partnership's debts beyond its $100 capital contribution and further, it was not required to bear any of the partnership's losses. Indeed, Park Cities did not at any time make any further contribution to the capital of Limited. Nevertheless, Park Cities was to receive 50 percent of the income as well as 50 percent of the assets remaining after final distribution. Obviously, it was intended that Park Cities benefit materially from this limited partnership arrangement. Though the specific intent of the parties is not clear, the articles of agreement signed by these partners are clear and concise and will admit of only one interpretation:

"The Limited Partner shall not be responsible for the debts of the partnership in excess of a capital contribution as herein provided and *any losses shall be borne entirely by the General Partner, Mattie Caruth Byrd.*" [Emphasis added].

As agreed, the cumulative net loss of Mattie Caruth Byrd Limited was reflected in Mrs. Byrd's capital account. The agreement does not even attempt to exclude depreciation from the scope of the term "losses." "Loss is a generic relative term, it is not a word of limited, hard and fast meaning." Black's Law Dictionary, 1094 (4th Ed. 1968). As depreciation is normally viewed as being a loss, though not always entirely a real economic loss to the partnership, we may not construe the above agreement in any fashion other than as is generally set out. In the absence of anything indicating a contrary intent, we must view the broad phrase, "*any* losses," as it is normally viewed. If the parties had intended to allocate only certain types of losses, they should have set this out in their agreement. Finally, aside from the fact that such loss allocation gave rise to economic benefits favoring Mrs. Byrd, the parties expressly agreed that she was to bear the total financial burden of all losses. Having agreed to bear the losses and agreeing to the method of accounting for such losses, and having accepted those charges and using them as an income tax deduction, we will not now allow the agreement and its intended consequences to be subverted.

The terms of the agreement indicate that the general partner was to receive the partnership losses, including those caused by depreciation, so long as the general partner actually bore the ultimate financial responsibility for the losses. Based upon the agreement and the applicable law, we hold that upon dissolution Mrs. Byrd's capital deficit, resulting from the special allocation of depreciation to her account as the general partner, was an asset of the partnership and her estate is to account to the partnership for that amount. Mrs. Byrd's estate is

therefore presently liable to suffer the financial loss for this $1,987,344 as per the articles of agreement by contributing such amount to bring the balance of her capital account to zero.

The judgment of the court of civil appeals on this point is reversed and the cause is remanded to the trial court for final proceedings consistent with this opinion.