Stephen Monteith Clarke v. Harris L. Kempner et al










WITHDRAWN
12-31-02



IN THE
TENTH COURT OF APPEALS
 

No. 10-01-263-CV

     STEPHEN MONTEITH CLARKE,
                                                                         Appellant
     v.

     HARRIS L. KEMPNER, ET AL.,
                                                                         Appellees
 

From the 133rd District Court
Harris County, Texas
Trial Court # 00-06086
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Stephen Clarke (Clarke) and Harris Kempner, III (Kempner) owned separate businesses in
Houston that provided facilities and services for special events such as receptions, banquets, and
parties. Clarke and Kempner had separate contracts with Dan Blasingame’s businesses to cater
the food and alcoholic beverages served at the events. In the summer of 1997, after a restaurant
project involving Clarke and Blasingame failed to develop as planned, they sued each other. There
was a mediation which included Kempner, because a possible resolution of the disputes between
Clarke and Blasingame might include a business arrangement among the three. The mediation was
successful. To carry the settlement agreement into effect, documents were signed which resulted
in (a) dismissal of the lawsuit, (b) establishment of a limited partnership


 between Kempner,
Clarke, and 2840 GP, L.L.C. (L.L.C.), a limited liability company owned by Kempner, (c)
execution of an “Exclusive Beverage Services Agreement” and a “Premier Catering Agreement”
between Clarke,


 the limited partnership, and Blasingame’s companies, and (d) a mutual release. 
The limited partnership thus formed was named “2840 Chimney Rock, Ltd.” (the limited
partnership). L.L.C. was the general partner and Clarke and Kempner were limited partners. 
Clarke’s interest was thirteen percent of the gross revenue and twenty percent in the capital of the
limited partnership.
      The purpose of the limited partnership was to renovate a building—which had been purchased
by Kempner in October 1997 and conveyed to 2840 Chimney Rock, Ltd. in January 1998—and
turn it into another facility, to be called “La Bella Terraza,” for receptions, banquets, and parties. 
Under the partnership agreement, Clarke was to make an initial capital contribution of: (a) an
assignment of his interest in a copyright to plans and drawings he had made; (b) a license to use,
copy, and modify the “trade dress rights” which he had in the project; and (c) design assistance,
as requested by the partnership, during construction of La Bella Terraza. Clarke provided no
money for his interest in the partnership, but the partnership agreement valued his contributions
at $166,035.
THE DISPUTE 
      The work on La Bella Terraza lasted from June 1998 to January 1999. However, things did
not go well between Clarke and Kempner, who accused Clarke of not providing his expertise in
the design of the facility or assigning his design-concept to the partnership. Kempner also claimed
that Clarke owed his share (twenty percent) of the 1997 taxes due on the building in the amount
of $2,757.48.


 He made demand for payment on Clarke under specific provisions of the
partnership agreement. Kempner said that on October 30, 1998, he sent Clarke a letter demanding
payment in twenty days, and on November 24, 1998, he sent Clarke another letter informing him
that his interest in the partnership had been “repossessed” under the terms of the partnership
agreement. Kempner also claimed he sent a final letter, dated December 26, 1998, which
informed Clarke that his interest had been “forfeited.” La Bella Terraza opened in February 1999
under the operation of Blasingame.
      In February 2000, Clarke sued Kempner, L.L.C., and the limited partnership. Among other
claims, Clarke accused Kempner of only pretending to send the notice letters about the taxes by
mailing empty envelopes to obtain mailing receipts, or, in the alternative, of burglarizing Clarke’s
office to take the notice letters so Clarke would not see them. His requested relief included: (1)
a declaration that he was still a partner in the partnership; (2) a receiver for the partnership, or an
order removing L.L.C. as the general partner; (3) an accounting; (4) actual and punitive damages;
(5) a “charging order” for amounts he was entitled to under the partnership agreement; and (6)
attorney’s fees.
      Kempner and the partnership (but not L.L.C.) countersued, alleging that Clarke never
intended to work on the La Bella Terraza project and that his real motive was to undermine the
project so it would not compete with his own facility. They requested: (1) a declaration that
Clarke no longer held an interest in the partnership and attorney’s fees associated therewith; (2)
over $168,000 in damages for breach of contract because Clarke failed to fulfill duties under the
partnership agreement; (3) over $166,000 in damages because Clarke defrauded them by making
false representations about his abilities and the assignment of the “trade dress”; (4) over $500,000
in damages for breach of fiduciary duty; (5) over $500,000 in damages for violations of the
Deceptive Trade Practices Act (DTPA); (6) repayment of a $15,000 loan made by Kempner to
Clarke when the partnership was formed and attorney’s fees associated therewith; and (7) punitive
damages.
      A jury trial was held in May 2001. The jury found:
      •    Kempner and “2840 Chimney Rock GP., L.L.C.” did not breach a fiduciary duty to
Clarke by either (a) requesting the 1997 taxes or (b) failing to provide notices to Clarke
of the forfeiture.
 
      •    Clarke failed to comply with the partnership agreement, but there were no damages as
a result.


 Damages were defined as “[t]he market value of Clarke’s services and support
to the Bella Terrazza that were not provided.”
 
      •    Clarke defrauded Kempner.


 As a result, damages to Kempner and the partnership were
owed in the amount of $83,000.
 
      •    Clarke breached his fiduciary duty to Kempner and the partnership. As a result, damages
were owed to Kempner and the partnership in the amount of $30,000.
 
      •    Clarke did not act with “malice.”
 
      •    Clarke made misleading representations to Kempner and the partnership (DTPA Claim). 
As a result, damages to Kempner and the partnership were $83,000.
 
      •    Clarke “knowingly” made the misrepresentations, resulting in $2,757.48 in damages to
the partnership.



 
      •    Reasonable attorney’s fees for Kempner and the partnership were $80,000, plus $10,000
for a direct appeal, $5,000 if a petition for review is filed or responded to, and $5,000
if the petition were granted.
 
      •    No attorney’s fees for Kempner regarding a $15,000 loan, on which there was an
unopposed instructed verdict.
 
      •    Reasonable attorney’s fees for Clarke were $70,000, plus $10,000 for a direct appeal,
$5,000 if a petition for review is filed or responded to, and $5,000 if the petition were
granted.

      The judgment against Clarke awarded (1) $15,000 to Kempner plus prejudgment interest, (2)
$83,000 to both defendants plus prejudgment interest, (3) $2,757.48 to the partnership as
“punitive” damages, and (4) the defendants’ attorney’s fees. The judgment denied Clarke’s
request for declaratory relief, and all other relief regarding both parties was denied. 
ISSUES ON APPEAL
      Clarke complains:
      1.   The 1997 taxes were incurred before the partnership agreement, and so Clarke had no
duty under the partnership agreement to pay them. Therefore, the forfeiture of his
partnership interest was invalid, the defendants breached their fiduciary duty by forfeiting
his interest, and judgment should be rendered in his favor on this claim.
 
      2.   Evidence of his thirteen-percent share of the gross revenues of the limited partnership
was undisputed, and judgment for damages should be rendered in his favor.
 
      3.   He is entitled to judgment for his attorney’s fees.
 
      4.   The jury’s answers that Clarke breached the contract, but there were no damages,
“establish that he substantially performed the contract.” 
 
      5.   The evidence was legally insufficient to support the jury’s damages findings for the
claims of fraud, breach of fiduciary duty, and violations of the Deceptive Trade Practices
Act. And without actual damages, the award of $2,757.48 in damages for a “knowing”
violation cannot stand.
 
      6.   The evidence is legally and factually insufficient to support the jury’s failure to find that
the defendants did not breach their fiduciary duty to Clarke.
Clarke’s Claim for a Declaratory Judgment
      The partnership agreement states “[t]he General Partner may issue notices for additional
Capital Contributions to each Partner based on each Partner’s Capital Interest for (i) taxes and
insurance associated with the project, (ii) costs associated with the improvement, development,
expansion, and remodeling of the Project which may accrue after the 3rd anniversary date of this
Agreement, and (iii) other costs and expenses incurred in connection with the Project.” [Section
5.2] The following definitions are provided in Section 1.1 of the agreement:
      •    “Project”: “[T]he Property and the Development, in whatever stage of completion, and
all rights associated with the development which belong to the Partnership, including all
business operated on or out of the Property.” 
 
      •    “Property”: “Lots 43, 44, and 45 of Westheimer Estates, a subdivision in Harris County,
Texas according to the map or plat thereof recorded in Volume 25, Page 29 of the Map
Records of Harris County, Texas (also known as 2840 Chimney Rock, Houston, Texas
77056).” 
 
      •    “Development”: “(a) [T]he acquisition and ownership of the Property, and (b) the
planning, engineering, construction, operation, financing, management, leasing, and/or
sale of all or portions of the Property.” 
Also applicable is Section 5.5(c): “A Partner’s Capital Account shall be debited with (i) the
amount of cash and the Book Value of any Partnership property distributed to such Partner
pursuant to any provision of this Agreement, (ii) such Partner’s allocable share of Losses, and (iii)
the amount of any liabilities of such Partner that are expressly assumed by the Partnership or that
are secured by any property contributed by such Partner to the Partnership.”
      By the agreement’s express wording, Clarke was obligated to pay “taxes . . . associated with
the project.” The “project” includes “the property and the development.” The “property” is the
building which was renovated. The “development” includes “the acquisition . . . of the
Property.” Both parties assert that the plain language of these provisions support their respective
positions. However, Section 5.5(c) makes liabilities of a partner that are assumed by the
partnership, or that are secured by property contributed to the partnership, the responsibility of
that partner. 
      A partnership agreement is construed under the general law of contracts. Park Cities Corp.
v. Byrd, 534 S.W.2d 668, 672 (Tex. 1976); Kahn v. Seely, 980 S.W.2d 794, 797 (Tex. App.—San
Antonio 1998, pet. denied); Murphy v. Seabarge, LTD, 868 S.W.2d 929, 933 (Tex.
App.—Houston [14th Dist.] 1994, no writ). In construing a contract, the goal is to determine the
intent of the parties. Nat. Union Fire Ins. v. CBI Industries, 907 S.W.2d 517, 520 (Tex. 1995);
Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1993); Kahn, 980 S.W.2d at 797. A contract is
construed according to the plain meaning of its express wording. Lyons v. Montgomery, 701
S.W.2d 641, 643 (Tex. 1985); Kahn, 980 S.W.2d at 797.
      The evidence concerning the unpaid taxes is undisputed. When Kempner acquired the
property in 1997, he received credit for the seller’s portion of the 1997 taxes, which then went
unpaid. When he conveyed the property to the partnership in 1998, before the partnership
between Clarke, Kempner and the L.L.C. was formed, the deed provided: “Reservations from and
Exceptions to Conveyance and Warranty: . . . Real estate taxes for the year 1998 which are hereby
assumed by [Grantee].” Thus, Kempner remained responsible for 1997 taxes left unpaid when
the property was purchased. It may be that when Kempner executed the partnership agreement
he was unaware that back taxes were owing for 1997, but that does not change our conclusion that
the 1997 taxes were his personal liability and should have been debited to his capital account under
Section 5.5(c) of the partnership agreement.
      Because we find that, as a matter of law under the partnership agreement, Clarke was not
responsible for payment of any part of the 1997 taxes, then, also as a matter of law, Kempner and
L.L.C. wrongfully repossessed or forfeited Clarke’s interest in the partnership. We sustain
Clarke’s first issue. We will render the judgment that the trial court should have rendered, i.e.,
judgment for Clarke on his claim for declaratory relief and judgment that Kempner and the
partnership take nothing by their counterclaim for a declaratory judgment based on an assertion
of Clarke’s breach of the partnership agreement by failing to pay the assessment.
Clarke’s Claim for Partnership Revenues
      Clarke claims that, because his share of the partnership was wrongfully forfeited and he
remains a partner, he is entitled to his thirteen percent share of the gross profits under the
partnership agreement. He claims that the undisputed evidence at trial established this amount at
$40,533.49. Clarke preserved his complaint by a motion for judgment notwithstanding the
verdict.
      Section 4.3 of the limited partnership agreement provides that Clarke’s “Operational Interest”
in the partnership is “based on the volume of Gross Sales.” The “Annual Gross Revenue” is
computed for each calendar year and was to be prorated for the year 1998. Section 9.2(a) requires
the limited partnership to distribute to Clarke monthly, beginning April 15, 1998, his operational
interest in gross revenues received by the partnership during the previous month. His second issue
asserts that the amount to which he is entitled was conclusively established by the evidence. We
agree. Furthermore, although there was no jury question about these damages, matters
conclusively proven require no jury question. Henshaw v. Kroenecke, 656 S.W.2d 416, 420 (Tex.
1983); Transit Ent. v. Addicks Tire & Auto Supply, 725 S.W.2d 459, 462 (Tex. App.—Houston
[1st Dist.] 1987, no writ); Tex. R. Civ. P. 279.
      We sustain this issue and will render judgment in favor of Clarke for $40,533.49.
Attorney’s Fees
      Having found that the trial court should have entered judgment for Clarke on his request for
declaratory relief and damages, we now address his third issue relating to attorney’s fees. In
response to questions to find the reasonable attorney’s fees for each party’s necessary services,
the jury found: $70,000 for Clarke and $80,000 for Kempner and the partnership for trial of the
case, $10,000 for an appeal to the court of appeals, $5,000 for making or responding to a petition
for review to the supreme court, and $5,000 if the petition is granted. The parties further
stipulated that the amount of attorney’s fees should be increased by $15,000 for post-trial motions.
Kempner’s Attorney’s Fees
      In Utley v. Marathon Oil Co., we said:
Under the declaratory judgments act, the granting of attorney's fees is with the discretion
of the trial court. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997);
Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998). The act, however, imposes four
limitations on that discretion. See Bocquet, 972 S.W.2d at 21. The attorney's fees must be
(1) reasonable, (2) necessary, (3) equitable, and (4) just. See id. Whether the attorney's fees
are reasonable and necessary are fact questions. See id. Whether the attorney's fees are
equitable and just are matters of law, which come within the trial court's discretion. See id. 
The court may conclude it is not equitable or just to award reasonable and necessary
attorney's fees. See id.

Utley v. Marathon Oil Co., 31 S.W.3d 274, 281 (Tex. App.—Waco 2000, no pet.) (quoting
Stephenson v. LeBoeuf, 16 S.W.3d 829, 843 (Tex. App.—Houston [14th Dist.] 2000, no pet.)).
      The jury determined the fact questions; it was asked to find the reasonable attorney’s fees for
each party’s necessary services. The parties stipulated to an increase in the amount for post-trial
services. Clarke does not assert that the amounts are unreasonable or unnecessary. Thus, we
must address the legal questions of “equitable” and “just.” See Stephenson, 16 S.W.3d at 843
(court of appeals found that an award of attorney's fees was neither equitable nor just); see also
Bocquet, 972 S.W.2d at 20.
      Based on this record and in light of our holdings, we find that the award of attorney’s fees to
Kempner and the partnership under the declaratory judgment act is neither equitable nor just. 
Stephenson, 16 S.W.3d at 843. Thus, the trial court abused its discretion in awarding attorney’s
fees to Kempner and the partnership.
Clarke’s Attorney’s Fees
      We find that Clarke should have been awarded attorney’s fees under section 38.001(8) of the
Civil Practice and Remedies Code. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon
1997). Neither party objected to the jury questions on attorney’s fees. Tex. R. Civ. P. 274. Nor
were the amounts of attorney’s fees disputed. Id. 279. Therefore, we sustain Clarke’s third issue,
and we will render judgment that Clarke is entitled to his attorney’s fees as determined by the jury
and the stipulation.
Breach of Contract by Clarke
      The obligations that were the subject of Kempner’s and the partnership’s counterclaim for
breach of contract arose by virtue of Clarke’s agreement with the partnership for his capital
contribution. In issue four, Clarke asserts that the jury’s finding of zero damages, although it
found that he had breached the agreement, entitles him to judgment on that claim. We agree. We
will render judgment that Kempner and the partnership take nothing by virtue of their breach of
contract claim.
Breach of Fiduciary Duty, Fraud, and DTPA Claims
      Clarke’s fifth issue attacks the findings that he committed fraud against Kempner and breached
a fiduciary duty and violated the Deceptive Trade Practices Act with respect to Kempner and the
partnership.
Fraud
      In question seven the jury found that Clarke committed fraud against Kempner by a
misrepresentation or by failing to disclose a material fact. In question eight, however, the jury
was asked to assess damages for that fraud accruing to both Kempner and the partnership. It
found $83,000.
      Clarke’s obligation was to make his capital contribution as set forth in the partnership
agreement. That obligation was to the partnership, not to Kempner. The jury found that he
breached that obligation, but it awarded no damages. Ordinary breach of contract is not fraud. 
Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 435 (Tex. 1986) ("Failure to perform, standing
alone, is no evidence of the promisor's intent not to perform when the promise was made. 
However, that fact is a circumstance to be considered with other facts to establish intent."). We
find no evidence that Clarke committed fraud, as defined in the charge, against Kempner. We
sustain the fifth issue as to the finding of fraud and will render judgment for Clarke on that claim.
Fiduciary Duty
      Question nine asked whether Clarke breached a fiduciary duty to Kempner and the
partnership.


 None of the parties has asked, either at trial or on appeal, whether limited partners
owe a fiduciary duty to anyone or, if so, to whom. Clarke did assert in a motion for judgment
notwithstanding the verdict that there was no evidence that would allow a recovery for breach of
a fiduciary duty.
      Under the Texas Revised Limited Partnership Act (“TRLPA”) of 1987, limited partners do
not ordinarily participate in control of the business and are not (with a few exceptions not
applicable here) liable for partnership obligations. Tex. Rev. Civ. Stat. Ann. art. 6132a-1, §
3.03(a) (Vernon Supp. 2002). The TRLPA makes the law of general partnerships applicable to
limited partnerships in the absence of another governing statute and is silent with respect to the 
duties of a limited partner. Id. § 13.03. However, section 4.03 of the TRLPA provides that
general partners of a limited partnership have, with exceptions, the same rights, powers, and
liabilities of partners in a general partnership. Id. § 4.03. This can be read to include “duties.” 
By implication, limited partners do not have those rights, powers, and duties. Indeed, article VI
of the agreement creating the limited partnership so limits the rights, duties, and liability of each
limited partner. Furthermore, under the Texas Revised Partnership Act (TRPA), general partners
owe only duties of “loyalty” and “care” as defined by that act. Tex. Rev. Civ. Stat. Ann. art.
6132b-4.04(a), (b), (c) (Vernon Supp. 2002). And article 6132b-4.04 of the act states that a
partner “is not held to the same standards as a trustee.” Id. art. 6132b-4.04(f) (Vernon Supp.
2002). This is not a traditional fiduciary duty. Id. (Comment of the Bar Committee—1993).
      Furthermore, a limited partner would be liable for a breach of the partnership agreement only
if we applied section 13.03 of article 6132a-1. Id. art. 6132a-1, § 13.03(a) (Vernon Supp. 2002). 
Although article 6132b-4.05 refers to both a breach of the agreement and a violation of a duty (as
defined in the article), only general partners have duties. The TRLPA is silent about what duty
a limited partner owes; by the enactment of a statute concerning the duties of loyalty and care of
a general partner, we infer that the absence of a statute about similar duties of a limited partner
means the Legislature intended that they have none.
      But the parties, in their pleadings and by the charge as submitted, tried the case as though
Clarke and Kempner, as the limited partners, had the same duties to each other and to the
partnership as L.L.C., the general partner. Furthermore, the charge used the term “fiduciary
duty” with respect to the duty each owed to the other and then mixed parts of the common law
definition with the statutory definitions of duty found in article 6132b-4.05.
      Finally, the limited partnership agreement provides that it contains the entire agreement by
and among the parties and supersedes any prior understandings and agreements among them.
      The jury found that Clarke breached a fiduciary duty to Kempner and to the limited
partnership, resulting in damages of $30,000.


 Clarke, as a limited partner, owed no fiduciary
duty to Kempner or to the partnership. We sustain issue five with respect to the finding of a
breach of fiduciary duty and will render judgment for Clarke on that claim.
DTPA
      By question twelve, the jury was asked whether Clarke had committed a false, misleading,
or deceptive act or practice that was a producing cause of damage to Kempner and the limited
partnership. Clarke was contractually obligated to make a specified capital contribution under the
limited partnership agreement. The jury found that his failure to do so was a breach of contract. 
The Supreme Court has repeatedly held that a mere breach of contract, without more, is not a
DTPA violation. Crawford v. Ace Sign, Inc., 917 S.W.2d 12, 14-15 (Tex. 1996); La Sara Grain
Co. v. First Nat’l Bank, 673 S.W.2d 558, 565 (Tex. 1984); Ashford Dev., Inc. v. USLife Real
Estate Servs.Corp., 661 S.W.2d 933, 935 (Tex. 1983).
      Because the finding of a DTPA violations fails, the findings of a “knowing” violation and the
attendant award of punitive damages must also fail.
       We sustain issue five as to the DTPA claim and will render judgment for Clarke on that
claim.
Clarke’s Claim of Breach of Fiduciary Duty
      Clarke’s final issue asserts that the evidence conclusively shows a breach of fiduciary duty
by Kempner and L.L.C. Alternatively, he says the jury’s failure to find such a breach is against
the weight and preponderance of the evidence.
      Question one asked if Kempner and/or “2840 Chimney Rock G.P., L.L.C.” failed to comply
with a fiduciary duty. Thus, L.L.C.’s name was blended with the name of the limited partnership
to read “2840 Chimney Rock G.P., L.L.C.” That mistake was not repeated throughout the rest
of the charge. First, Kempner, as a limited partner, owed Clarke, a fellow limited partner, no
duty. Second, there can be no evidence of a breach of fiduciary duty by an entity that does not
exist, i.e., “2840 Chimney Rock G.P., L.L.C.” Thus, we conclude that under the question
asked: (a) Kempner had no fiduciary duty to Clarke; (b) the other entity inquired about does not
exist; and (c) Clarke did not submit a proper jury question inquiring about a breach of fiduciary
duty by L.L.C. We overrule issue six.
Debt due Kempner by Clarke
      Clarke concedes that the judgment awarding Kempner $15,000 plus six per cent interest is
correct. Accordingly, we will affirm the judgment on that claim.
JUDGMENT
      We affirm that part of the judgment that Harris L. Kempner III recover from Stephen M.
Clarke the sum of $17,919.45 which amount includes prejudgment interest as of the date of
judgment. Said sum may be offset against any amount awarded to Clarke herein;
      We affirm that part of the judgment that Stephen M. Clarke take nothing by virtue of his claim
for appointment of a receiver, appointment of a general partner for 2840 Chimney Rock Ltd., and
for an accounting of the affairs of 2840 Chimney Rock Ltd. up to the time of trial; 
      We reverse that part of the judgment denying Stephen M. Clarke a declaratory judgment and
render a declaratory judgment that Stephen M. Clarke is a limited partner of 2840 Chimney Rock
Ltd. and that Harris L. Kempner III, 2840 GP, L.L.C., and 2840 Chimney Rock Ltd. were not
entitled to foreclose on or forfeit Stephen M. Clarke’s interest in the partnership based on unpaid
taxes for the year 1997;
      We render judgment that Stephen M. Clarke recover under of his claim for distribution of
amounts due him under the limited partnership agreement of 2840 Chimney Rock Ltd. as of the
date of trial, in the sum of $40,533.49 which amount includes prejudgment interest as of the date
of judgment;
      We reverse that part of the judgment awarding Harris L. Kempner III and 2840 Chimney
Rock Ltd. $83,000 plus prejudgment interest and punitive damages of $2,757.48 on their
counterclaims based on fraud and/or a violation of the Deceptive Trade Practices Act and render
judgment that they take nothing by virtue of their counterclaims based on (1) an asserted right to
forfeit Stephen M. Clarke’s interest in the partnership, (2) breach of contract, (3) fraud, (4) breach
of fiduciary duty, and (5) a violation of the Deceptive Trade Practices Act;
      We reverse the judgment for attorney’s fees awarded to Harris Kempner and 2840 Chimney
Rock Ltd. and render judgment that Stephen M. Clarke recover of and from Harris L. Kempner
III and 2840 GP, L.L.C., jointly and severally, attorney’s fees in the amount of $105,000;
provided that $10,000 of this award shall be remitted in the event Stephen M. Clarke does not file
a petition for review and is not required to respond to a petition for review filed by any other party
in the Supreme Court of Texas, and $5,000 shall be remitted if a petition for review is filed in but
not granted by the Supreme Court of Texas; and
      Postjudgment interest on all sums awarded herein shall run from the date of the trial court’s
judgment.
      We assess costs of the trial and appeal against Harris L. Kempner III and 2840 GP, L.L.C.,
jointly and severally.

                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Judgment affirmed in part, reversed and rendered in part
Opinion delivered and filed December 11, 2002
Do not publish
[CV06]