No. 2326.

MARGARET MOORE *v.* A. G. STEELE ET ALS.

1. PARTNERSHIP. — It is the right of a partner to have the partnership indebtedness satisfied from the partnership assets before a division can be had. The interest of each partner is confined to what may be left after liquidating all debts of the firm, and in the payment of such debts each partner is, as between himself and the others, entitled to retain, before a division of assets, all sums advanced by him beyond his share of the capital, and sufficient to reimburse him for debts of the firm paid by him.

2. SAME.—The effect of a sale of an undivided interest of partnership assets by one of the firm is a dissolution of the partnership, and the purchaser, in the absence of special contract to the contrary, becomes a joint owner of the property.

3. SAME—ESTOPPEL.—A partner who thus sells, and in the sale treats the partnership property as though all equities between himself and partners were settled, and appropriates to himself what would have been his interest if all partnership debts had been paid, is estopped from setting up claims against the interest of his former partner in the firm assets, for reimbursements on account of advances made, or firm debts paid by him.

APPEAL from Brazos. Tried below before the Hon. W. E. Collard.

*J. D. Thomas,* for appellant: On the proposition that A. G. Steele had and could transfer only such interest in the firm cattle, as would remain, after settlement of all partnership accounts between himself and his co-partner, or the assignee of his co-partner, cited Hill v. Beach, 12 New Jersey Equity, 38 (citing West v. Skip, 1 Vesey, 242; Jacky v. Butler, 2 Lord Raymond, 871; Haydon v. Haydon, Sal., 392); Uhler v. Semple, 20 New Jersey Equity, 292; Murray v. Murray, 5 Johns's Chancery, 70; Rodriguez v. Hefferman, 5 Johns's Chancery, 429; Van Scoter v. Lefferts, 11 Barbour, 140; Nicoll v. Mumford, 4 Johns's Chancery, 522; Marquand v. New York Manufacturing Company, 17 Johns, 525; Parsons on Partnership, marginal pages 353 and 508–9; Wade on Notice, section 36.

That Tom Moore had, and Margaret Moore, his assignee, still

has, a lien on the firm cattle for the money advanced by Tom Moore to the firm, beyond his share of the capital, superior to any right of an assignee of A. G. Steele, he cited Uhler v. Semple, 20 New Jersey Equity, 292; Clements v. Jessup, 36 New Jersey Equity, 569.

*A. G. Brietz,* for appellees, on his proposition that, though a partnership was in contemplation between Moore and Steele, about the date of the execution of the note in suit, and the money obtained by Moore was used in the purchase of cattle for the partnership, yet, before its actual formation, the money was loaned by the plaintiff, Jane Callan, to Tom Moore, one of the partners, on his own individual credit and the securities offered, and the debt therefore is the individual debt of Tom Moore, and not a partnership debt of Moore & Steele, and the partnership property, as such, is not liable for its payment, cited Parsons on Partnership, side page 215; Id., side page 104; Story's Partnership, sections 134, 136, 140.

On his proposition that the partnership having been dissolved by the act of sale from Tom Moore to his mother, Margaret Moore, thereafter A. G. Steele held as a tenant in common with Margaret Moore, the vendee of Tom Moore, and could convey his undivided half interest in the cattle in the manner in which he did, and they are not subject to any demand on the part of the plaintiff, Jane Callan, or of the appellant, he cited Parsons on Partnership, side pages 400-1, 406; Story's Partnership, sections 307-309.

*Boone & Cobbs,* also for appellees, on their proposition that since the six thousand dollars was loaned by plaintiff Mrs. Callan to Thomas Moore, and the note given for it by Thomas Moore was an individual debt of Thomas Moore's secured by A. G. Steele, and the mortgage given by Thomas Moore, it was not a partnership debt of Steele & Moore and did not operate as a lien on their partnership effects, cited Parsons on Partnership, pages 113–135, side page 215; Story on Partnerships, sections 144–148; Collyer on Partnerships (sixth edition by Wood), volume 1, sections 5–11, et seq.; Id., section 362; Id., volume 2, sections 5–18, et seq.

They also cited Parsons on Partnerships, page 289, side page, 265, page 371, side page 342; Story's Equity, section 434; Bump on Fraudulent Conveyances (third edition), 493; Craig v. Zim-

merman, Northwestern Reporter, September 4, 1886; Jewett v.
Meech, 101 Indiana, 289.

GAINES, ASSOCIATE JUSTICE.    Mrs. Jane Callan brought this
suit against Tom Moore and A. G. Steele upon a promissory note
executed by them payable to her, and sued out a writ of attach-
ment which was levied upon a certain stock of cattle which had
belonged to the makers as partners, and also upon certain indi-
vidual property of Tom Moore which had been mortgaged to
secure the debt.    Appellee Chinski intervened in the suit and
claimed a lien upon one half of the partnership cattle by virtue
of a mortgage executed to him before the levy by one F. M.
Steele who had previously purchased from A. G. Steele.    He
asked that F. M. Steele be made a party, that he have judgment
against him, and that his mortgage be foreclosed.    Appellant ·
also intervened and set up a purchase of all the property levied
on as Tom Moore's, including his interest in the partnership be-
fore the levy of the attachment, and sought to have the interest
which originally belonged to Steele sold to satisfy the debt be-
fore subjecting the property purchased by her to its payment.

The court gave judgment against Tom Moore as principal and
A. G. Steele as surety on the note, and foreclosed the mortgage
and attachment lien upon Tom Moore's individual cattle and a
half interest in the partnership cattle; but also gave judgment
against F. M. Steele in favor of Chinski and foreclosed his
mortgage upon the other half of the partnership cattle.

There is no statement of facts in the record, but the court's
findings of the issues of fact appear in the transcript and are as
follows:

1. Upon an understanding that A. G. Steele would sign the
note sued on, of date the twenty-ninth of May, 1883, the plain-
tiff lent the six thousand dollars to Thomas Moore and took a
mortgage on Moore's individual property, six hundred head of
cattle and fifty head of horses, branded 700.    Steele signed the
note as a surety, and Mrs. Callan accepted him as such.    The
credit was extended by her to Moore with the sureties offered.

2. The six thousand dollars were borrowed by Moore with an
understanding with Steele, his co-defendant, that it should be
used by them in the purchase of cattle, and they contemplated
a co-partnership in the cattle business at the time the money was
borrowed.    Mrs. Callan knew nothing of the contemplated part-
nership at the time she lent the money.

3. On June 12, 1883, the six thousand dollars were deposited in bank in the city of Houston as a partnership fund in the name of Steele & Moore, and the money was used by them in the purchase of cattle, among which cattle are the cattle levied on by plaintiff's attachment in the HEL brand.

4. Of the cattle mortgaged by Moore to plaintiff, there are now four thousand or four thousand five hundred dollars worth also attached by plaintiff.

5. Moore also has other cattle in the HL brand, which plaintiff has levied on under her attachment.

6. On the seventeenth day of April, 1886, Thomas Moore sold to his mother all of his undivided half interest in the said partnership cattle and all other cattle owned by him to pay her a debt of one thousand six hundred dollars, she accepting the same with a full knowledge of his business relations with Steele, and of the debt due plaintiff, and she accepting his responsibility in relation to plaintiff's debt. At the same time Moore sold her his interest in the Moore homestead, which interest is worth four or five hundred dollars. This interest has not been attached. Moore was then about leaving the country or had fled the country, since which he has returned and is now in court.

7. After Moore had sold out and left, but before he returned, A. G. Steele sold out his share of the partnership property to his father, F. M. Steele, for a valuable and adequate consideration, two thousand six hundred and fifty dollars, as per bill of sale, dated May 12, 1886.

The sale by A. G. Steele to his father was made to avoid any liability he might be under to pay the plaintiff's note whether as surety or partner. F. M. Steele is affected with notice of the existence of the partnership between Moore and Steele, but he did not know of plaintiff's debt or the intention of A. G. Steele to avoid its payment.

8. F. M. Steele was owing intervenor, I. Y. Chinski, one thousand six hundred and forty-eight dollars and forty cents with interest, and two thousand dollars borrowed of him with which to buy A. G. Steele's stock, evidenced by notes, and to secure Chinski he executed to him the instrument in evidence purporting to be a bill of sale of the stock for three thousand eight hundred dollars, dated twenty-fourth day of May, 1886, though it was intended to be a mortgage to secure said amount and twelve per cent. interest from its date, now amounting to three thousand nine hundred and sixty-nine dollars and sixty cents.

Chinski had no actual knowledge of the partnership between Moore and A. G. Steele, but is affected with notice of it by the recitals of the bill of sale to F. M. Steele and himself. Chinski had no actual or constructive knowledge of plaintiff's debt or the manner in which the loan was obtained from Mrs. Callan, or of the partnership in contemplation at the time of the loan.

9. The interest of A. G. Steele obtained in the six thousand dollars (one-half of it) remains unsettled between him and Thomas Moore.

10. Both Thomas Moore and A. G. Steele are insolvent.

Now it is complained that the court erred in refusing to subject A. G. Steele's half of the partnership cattle to the payment of plaintiff's judgment, before directing a sale of the property transferred by Tom Moore to appellant.

In support of the assignments, it is contended by appellant's counsel, that for the payment of the claim against A. G. Steele growing out of the transaction between them, Tom Moore had a lien on the partnership cattle, which passed to appellant by the sale to her and that before a settlement of accounts between them, Steele could not assign his interest in the cattle.

The interest of a partner in the property belonging to a firm is only his proportion of what is left after paying the partnership debts, and it is the right of every member of a firm to have the partnership indebtedness satisfied from its assets, before any division can be had. It is held that a partner who has paid the debts of a firm has a lien upon the partnership property for his reimbursement (Hill v. Beach, 12 N. J. Eq., 31); and also that one who has advanced money to the firm beyond his share of the capital, is entitled to retain the amount due him, before the other partners are entitled to receive any of the assets. (Uhler v. Semple, 20 N. J. Eq., 288.)

The findings of the court do not make clear the exact nature of the transaction between A. G. Steele and Tom Moore; nor do we think it important that this should be determined. When the latter sold to appellant he sold not his interest in the partnership nor his claim against his partner Steele. He sold simply one-half undivided of the cattle. In this disposition of the property Steele evidently acquiesced, for he subsequently sold to F. M. Steele his undivided half interest in the same. The effect of Moore's sale was to dissolve the partnership (Parsons on Partnership, 3d ed. pp. 433 and 434,) and we think it had the further effect to take from the property the character of firm

assets and to make the purchaser and A. G. Steele merely joint owners in the cattle.

Having elected to treat the property as if all equities were settled between the partners and to appropriate to himself what would have been his share if all claims against the firm or between the partners had been settled, we think that he was estopped to set up that he had any claim against his partner's half of the property to reimburse him for any advancement made to the firm or any liability incurred by him on that account. But if he had such claim we do not see that a mere sale of an interest in the property would transfer this equity to the purchaser.

The court found that the note sued on was not a partnership debt. If Tom Moore had any equity on account of the transaction it was only to be reimbursed for money advanced for the firm; and it follows from what we have said that after the sale to appellant neither he nor she was in a position to assert this equity.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered February 25, 1887.