SHERK v. FIRST NAT. BANK OF HEREFORD et al. (No. 2560.)

(Commission of Appeals of Texas, Section B. Nov. 20, 1918.)

1. PARTNERSHIP ⊚⟼179—INTEREST OF PARTNERS—SPECIFIC PROPERTY.

A partner has no specific interest in any particular chattel or part of the firm property, but only in the proper proportion of the surplus of the whole after payment of debts, including amounts due the other partners.

2. PARTNERSHIP ⊚⟼183(6)—SALE OF SHARE OF PARTNER—TITLE OF PURCHASER.

The assignee or mortgagee of the interest of one partner takes subject to all partnership debts and liabilities, since he can obtain no greater right than the assignor or mortgagor had.

3. PARTNERSHIP ⊚⟼183(6)—SALE OF SHARE OF PARTNER—TITLE OF PURCHASER.

Where a partnership purchased land with money advanced by plaintiff partner, who paid partnership notes and debts, and the other partner conveyed all his interest to plaintiff, after giving, while the partnership was insolvent, a deed of his interest to a third person as trustee for a bank, which was his individual creditor, the trustee had no rights superior to those of plaintiff.

4. PARTNERSHIP ⊚⟼264—DISSOLUTION—SALE BY ONE PARTNER TO OTHER.

A sale by one partner to another has the effect of dissolving partnership, since it destroys the community of interest.

5. PARTNERSHIP ⊚⟼183(6) — PAYMENT OF DEBTS—RIGHTS OF PARTNER.

Where partnership purchased land with money advanced by plaintiff partner, who paid partnership notes and debts, and the other partner conveyed all his interest to plaintiff, after giving, while the partnership was insolvent, a deed of his interest to a third person as trustee for a bank, which was his individual creditor, the bank had merely a right to subject any surplus remaining after payment of partnership debts, including the debt to plaintiff, who did not waive his rights by accepting the deed.

6. PARTNERSHIP ⊚⟼183(6) — APPLICATION OF ASSETS—INDIVIDUAL DEBTS.

The fact that the trust deed by one partner to a third person in payment of his individual debts was recorded did not have the effect, when the other partner accepted a deed to the same interest, of a waiver of his rights to have the partnership assets applied to the payment of partnership debts.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by A. L. Sherk against the First National Bank of Hereford and J. L. Fuqua. From a judgment of the Court of Civil Appeals (152 S. W. 832), affirming judgment that plaintiff take nothing, and decreeing foreclosure prayed by the defendant bank, plaintiff brings error. Reversed in part, and in part affirmed, as recommended by the Commission of Appeals.

G. W. Barcus, of Waco, for plaintiff in error.

Carl Gilliland, of Hereford, for defendant in error.

Statement of the Case.

MONTGOMERY, P. J. A. L. Sherk, plaintiff in error, sued the First National Bank of Hereford and J. L. Fuqua.

The plaintiff's petition was in two counts; the first in ordinary form of trespass to try title, to recover lots 13, 14, and 15, in block 10, of the town of Hereford. In the second count the plaintiff, Sherk, alleged substantially the following facts:

That in the year 1908 plaintiff and one Stenek, entered into a partnership agreement under the firm name of Sherk & Stenek for the purpose of conducting a livery, feed, and sales stable; it being agreed that each was to furnish one-half the necessary capital. That they purchased the lots in controversy and barn situated thereon for use in said business (the lots were conveyed to A. L. Sherk and James Stenek). That the lots were purchased from J. F. Easterwood; the price being $6,000, of which $1,500 was paid in cash, by plaintiff, Sherk, and a vendor's lien note being dated September 9, 1908, due six months after date, and plaintiff alleged that he thereafter paid the note in full out of his separate means. That the firm borrowed from the First State Bank & Trust Company of Hereford $7,575.80, for which they executed their joint notes, which note matured September 15, 1909. That plaintiff paid, prior to bringing the suit, $2,500 on the

note out of his own funds, and has agreed to pay the balance, and that Stenek had paid nothing, and had been released from liability thereon. That plaintiff placed on said lots improvements of the value of $1,-000, and paid therefor out of his own funds. That on March 21, 1910, in consideration of plaintiffs having paid the several sums of money above alleged, for and on account of said partnership, James Stenek, his partner, conveyed to plaintiff by warranty deed all said Stenek's interest in the property in controversy, and that the consideration was the reasonable value of such interest.

Plaintiff further alleged that prior to said conveyance, and on February 19, 1910, Stenek executed a deed of trust on said lots to J. L. Fuqua as trustee to secure the First National Bank of Hereford in payment of certain notes executed by said Stenek and by said Stenek and N. E. (Rood, and that said secured debt was the individual debt of said Stenek, and that neither plaintiff nor Sherk & Stenek were in any way interested therein; that when the trust deed was given the firm of Sherk & Stenek was insolvent.

The plaintiff prayed that he be quieted in the title to said property as against said deed of trust, and prayed in the alternative "that he have judgment fixing a partner's lien in his favor on Stenek's interest in said property, and declaring his a prior lien to any of the defendants to secure him in the payment of the sum of $7,287.90, together with all interest due thereon, to any that the defendants may have, and for a foreclosure of said lien," and for general relief.

The defendant bank and Fuqua, after a general denial, alleged title in themselves to the lots, and prayed for judgment for title and possession.

The defendants further alleged that Stenek was the owner on February 2, 1910, of an undivided one-half interest in the lots in controversy, and that at said time he executed the deed of trust on said interest, and also on survey 248, block No. 6, Castro county, Tex., to secure the payment of certain notes (fully described) executed by said Stenek and one Rood, and asked for a foreclosure.

The case was tried by a jury and the court gave a peremptory charge to find for the defendants a foreclosure of their deed of trust lien for the amount claimed, $4,739.75.

Judgment was accordingly entered that plaintiff take nothing and that defendant bank have its foreclosure, etc.

The Court of Civil Appeals affirmed this judgment, 152 S. W. 832. The facts are set out in the original opinion and the opinion on rehearing of the Court of Civil Appeals. From these and from the record we find that all the material facts alleged in the petition were either admitted or proven without contradiction, except the allegation that the $4,-500 note, executed to Easterwood as part of the purchase money for the lots, was paid by plaintiff. The facts disclose that Stenek, acting for the firm, borrowed the amount of this note and interest from a bank, giving the firm's note, and with the money thus borrowed paid the Easterwood note, and that the plaintiff afterwards, out of his own funds, paid the note given the bank. The evidence further showed that a part of the $2,500 paid on the note to the First State Bank & Trust Company was paid out of partnership funds.

The Court of Civil Appeals finds that the firm of Sherk & Stenek, at the time of the execution of the deed of trust and at the time of the trial, was insolvent. The lots in controversy seem to have been treated by the Court of Civil Appeals as partnership property, and we think the evidence conclusively shows that fact. The undisputed evidence shows that Sherk did not in fact know of the deed of trust to Fuqua as trustee to secure the debt of the First National Bank until after he obtained the deed from Stenek, although the deed of trust was filed for record and duly recorded soon after its execution. The evidence showed the execution and delivery of the deed of trust to Fuqua as trustee to secure the bank in the payment of notes due it by Stenek and Rood as alleged by it.

## Opinion.

To recapitulate briefly the essential facts: Sherk and Stenek were partners. Sherk advanced to the firm practically all the capital employed, although the partnership contract contemplated they should furnish the capital in equal portions. The partnership was indebted to various creditors, as well as to Sherk for advancements made to the partnership.

After the partnership became insolvent, Stenek, one of the partners, without the knowledge or consent of Sherk, mortgaged one-half interest in the real estate of the partnership to secure the payment of his individuals debts, and the same was duly recorded. About one month after the execution and recording of said mortgage, Stenek conveyed to his partner, Sherk, who had no actual knowledge of said mortgage, all his interest in the partnership property, and in addition included in the deed a section of land which Stenek owned individually; said land, however, being heavily incumbered. This conveyance recited as a consideration that certain advancements had been made by Sherk to the firm by furnishing funds and the payment of partnership debts, and further that Sherk agreed to pay certain partnership debts still unpaid, and further that Sherk assumed the debts against the section of land conveyed.

There was no reservation of an express lien. The controlling question in the case is whether the First National Bank, defendant in error, had a lien upon the partnership

property included in the mortgage which was superior to the rights of plaintiff in error, Sherk. The lower court and Court of Civil Appeals both held that the mortgage to the bank was superior to the rights of Sherk, and foreclosed the mortgage against him.

[1] We must first determine exactly what right, if any, the bank acquired by virtue of the mortgage. It is well settled that a—

"partner has no specific interest in any particular chattel or part of the property of the firm. His only interest is in a proper proportion of the surplus of the whole after payments of debts, including the amounts due the other partners." Bates on Partnerships, § 180; Oliphant v. Markham, 79 Tex. 550, 15 S. W. 569, 23 Am. St. Rep. 363; Moore v. Steele, 67 Tex. 435, 3 S. W. 448.

[2] It follows from the foregoing that, as the share of a partner is merely a right to a proper proportion of the surplus after payment of partnership debts and adjustment of balances, the assignee or mortgagee of the interest of one partner takes subject to all debts and liabilities, for he can get no greater right in the property than the assignor or mortgagor had. Bates on Partnership, § 183; Oliphant v. Markham, 79 Tex. 551, 15 S. W. 569, 23 Am. St. Rep. 363; Moore v. Steele, 67 Tex. 435, 3 S. W. 448; Parsons on Partnership (4th Ed.) § 178.

[3] From the foregoing it is apparent that the bank, by virtue of the deed of trust in this cause, got no more than a right to have that portion of the surplus, if any, remaining of the partnership assets, after the payment of debts and adjustment of accounts between the partners, which Stenek would have been entitled to, had no mortgage been given. The record shows that the partnership of Sherk & Stenek was insolvent when the deed of trust was given, and also at the date of the deed from Stenek to Sherk. The bank then had no lien or claim on the property, or even on any surplus, as it is apparent there could be no surplus to which its lien could attach. Parsons on Partnership, § 178.

The decision of the Court of Civil Appeals rests upon the proposition that, when Stenek conveyed his interest in the firm property to Sherk, thereby the partnership was dissolved, and any lien which Sherk may have had by virtue of the partnership was extinguished.

[4] It is true that a sale by one partner to another has the effect of dissolving the partnership. It destroys the community of interest and thereafter there is no partnership. The partnership property thereafter is the individual property of the purchasing partner, and so far as creditors of the partnership are concerned they have thereafter no claim upon the former partnership assets superior to the claims of the individual creditors of the purchasing partner, and the assets may be applied to the individual debts of the purchasing partner, even in preference to the partnership debts, provided, of course, there is no fraud. The cases cited by the Court of Civil Appeals abundantly sustain this proposition, but none of them hold that a partner, purchasing the interest of his copartner, thereby releases any right in the firm's property which he theretofore had in favor of a creditor of the selling partner. The case of Wiggins v. Blackshear, 26 S. W. 939, was a case in which all the members of the partnership mortgaged partnership property to secure their individual debts, and the court held that this mortgage was superior to the claims of the partnership creditors. This case is, however, no authority for the proposition that one member of an insolvent firm can execute a valid and enforceable mortgage to secure his individual debt on his interest in the property of an insolvent partnership.

The syllabus in Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370, fairly states the proposition decided, as follows:

"A member of a firm assigned and transferred in good faith his interest in the partnership property in payment of a just debt for which he was solely liable. The creditor took possession of it and sold it to A., who, by an act of sale, in which the other member of the firm united, transferred it for a valuable consideration to B. The firm and the members of it were insolvent. C., claiming to be a simple contract creditor of the firm, then filed his bill to subject the property to the payment of his debt. Held, that C. had no specific lien on the property, and, there being no trust which a court of equity can enforce, the bill cannot be sustained."

It will be noted that all of the partners had parted with their interest in the property, and therefore had no interest or equity therein, at the time the partnership creditor brought his suit to subject it to his debt.

The reason for the decision in the case is shown by the following quotation from the opinion:

"No doubt the effects of a partnership belong to it so long as it continues in existence, and not to the individuals who compose it. The right of each partner extends only to a share of what may remain after payment of the debts of the firm and the settlement of its accounts.

"Growing out of this right, or rather included in it, is the right to have the partnership property applied to the payment of the partnership debts in preference to those of any individual partner. This is an equity the partners have as between themselves, and in certain circumstances it inures to the benefit of the creditors of the firm. The latter are said to have a privilege or preference, sometimes loosely denominated a lien, to have the debts due to them paid out of the assets of a firm in course of liquidation to the exclusion of the creditors of its several members. It is practically a subrogation to the equity of the individual partner, to be made effective only through him. Hence, if he is not in a condition to enforce it, the creditors of the firm cannot."

All the other cases cited by the Court of Civil Appeals are controlled by the rule as stated above.

In this case the bank was a creditor, not of the firm, but of Stenek, one of the partners. The mortgage, at most, only gave the bank the right to share in the surplus, if any, remaining after payment of all firm debts and settlement of partnership accounts. It got

no lien on the specific property, and a sale by it under the deed of trust would have passed no title against the firm.

[5] The sale by Stenek to Sherk did not have the effect of creating a lien in favor of the bank on the specific property. It left the rights of the bank unaffected. The bank, after the sale, still had the right to subject the surplus, if any, of the partnership effects, to the payment of its debt. By accepting the deed Sherk did not waive his right as a partner to see that the property was applied to the payment of partnership debts; the very purpose of the conveyance was to vest the title in him free from any claim of Stenek and his creditors, and the consideration was the payment by Sherk of partnership debts and the satisfaction of debts due Sherk by the partnership.

"A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right." 40 Cyc. p. 252.

"A waiver exists only where one with full knowledge of a material fact does or forbears to do something inconsistent with the existence of the right or of his intention to rely on that right." 40 Cyc. 259.

[6] The undisputed testimony of Sherk is that he knew nothing of the deed of trust to the bank until after he obtained the deed from Stenek. The fact that the deed of trust was recorded does not charge him with such knowledge as can be the basis of a waiver. The deed itself shows that there was no intention to waive his rights, but rather to protect and preserve them.

If the matter is treated as if Sherk had a first lien on the partnership property and the bank a second, which almost expresses the facts, then the taking of the deed by Sherk would not have the effect of merging his lien in the fee title, so as to let in a second lien; but a court of equity would preserve and enforce his lien, as against the second lien of the bank. Under no view of the case was the bank entitled to the foreclosure on the partnership property. As to the section of land, the individual property of Stenek, the foreclosure was authorized.

We think the judgment of both the Court of Civil Appeals and the district court should be reversed, in so far as the First National Bank of Hereford was granted a foreclosure on lots 13, 14, and 15, of block 10, of the town of Hereford, in Deaf Smith county, and judgment here rendered that plaintiff, A. L. Sherk, recover the title and possession thereof as against said bank and the defendant J. L. Fuqua, and that the judgment, in so far as it foreclosed the lien of the said bank in survey No. 248, block No. 6, in Castro county, should be affirmed.

PHILLIPS, C. J. The judgment recommended by the Commission is approved and will be entered as the judgment of the Supreme Court.