**SPRING WOODS BANK OF HOUSTON, Appellant,**

v.

**Sidney E. LANIER, Jr. et al., Appellees.**

**No. 6162.**

Court of Civil Appeals of Texas, Waco.

May 15, 1980.

Douglass D. Hearne, Randell W. Livingston, Jr., Hearne & Babb, Austin, for appellant.

William C. Davidson, Jr., Campbell & Davidson, C. Robert Dorsett, Law Offices of C. Robert Dorsett, Austin, for appellees.

HALL, Justice.

In February, 1972, Sidney Lanier, Jr. and his father, Sidney Lanier, Sr. formed a partnership known as L & L Investment Company by oral agreement. Later, Lanier, Jr. and Lanier, Sr. acquired title to lots 5, 6 and 7 of block 4 of Hyde Park Annex, a subdivision located in the City of Austin, Travis County, Texas. Lots 5, 6 and 7 were then re-subdivided into Lot A, Pecan Park Addition; and the correct legal description then became "Lot A, Pecan Park Addition, a re-subdivision of Lots 5, 6 and 7, Block 4, Hyde Park Annex, a subdivision in the city of Austin, Travis County, Texas, according to the map or plat of said re-subdivision recorded in Volume 61 at Page 41 of the plat records of Travis County, Texas." Thereafter, in October, 1973, construction of a 25-unit apartment complex was completed on the property. On May 15, 1974, Lanier, Jr. and Lanier, Sr. reduced their oral partnership to a written agreement. The agreement provided that each owned a 50% interest in the business and property of the partnership. It also expressly prohibited either partner from selling or assigning his share or interest in the partnership "to any person or persons whatsoever" without the prior written consent of the other partner. In June, 1974, Lot A, Pecan Park Addition and the apartment improvements thereon were conveyed by Lanier, Jr. and Lanier, Sr. by warranty deed to the partnership, L & L Investment Company, and the deed was duly recorded during the same month. At all times since the conveyance, legal and record title to the property have been in L & L Investment Company. This property and its improvements and the personalty therein are the partnership's only assets.

On July 1, 1976, Lanier, Sr. executed a promissory note to the Spring Woods Bank of Houston, Texas (hereinafter "Bank") in the principal sum of $222,000.00. The proceeds of this loan were used mainly to pay off existing loans owed by Lanier, Sr. to Bank totaling approximately $150,000.00 and his debts to other creditors totaling about $60,000.00. To secure this loan, Lanier, Sr. simultaneously pledged certain business equipment and machinery to Bank, and he also signed two deeds of trust. One deed of trust purported to convey to "Don Stocking, Trustee, . . . all of the following described real estate, to wit:

"Three (3) tracts of land located in Bastrop County, Texas, Tract No. 1, containing 43.38 acres, Tract No. 2 containing 21.48 acres, and Tract No. 3 containing 71.56 acres, each such tract in the Stephen F. Austin Survey Abstract No. 3, Bastrop County, Texas, each being more fully described by deed recorded in Deed Records, Bastrop County, Texas; this is all of the real property and estate owned by Mortgagor located in said Abstract and in said county."

It is undisputed in the record that at the time of the execution of the deed of trust Lanier, Jr. and Lanier, Sr. each owned an undivided one-half interest in the three Bastrop County tracts conveyed in the trust deed. It is also undisputed that Don Stocking, named as trustee in the trust deeds, was Bank's attorney. The other deed of trust, the one which generated this lawsuit, purported to convey to "Don Stocking,

Trustee, . . . all of the following described real estate, to wit:

All of that certain lot and parcel of land known as Lot A in PECAN PARK ADDITION, Travis County, Texas, according to the map on plat thereof recorded in the Map Records of Travis County, Texas, together with all improvements located thereon; this is all of the real property and estate owned by Mortgagor located in said addition in said county."

Both deeds of trust were duly recorded in July, 1976.

On behalf of Bank, the loan transaction with Lanier, Sr. was handled by Richard Hairston, Bank's president. Lanier, Sr. testified that the note and the deeds of trust were executed in blank by him. This testimony was disputed by Hairston and by a witness who was Hairston's secretary at the time of the transaction. Lanier, Sr. testified that when he executed the deed of trust forms in blank that he intended to convey only his interest in the Bastrop County properties; that he did not intend to convey the property owned by the partnership L & L Investment; and that he did not intend to give a deed of trust to Bank on his "partnership interest" in L & L Investment. This testimony was supported by his pleadings.

The evidentiary record also contains an instrument denominated "Financing Statement—Form UCC-1," signed by Lanier, Sr. as "Debtor," and signed by Hairston on behalf of Bank as "Secured Party," which purports to pledge the following property to Bank:

"All of the Debtor's right, title and interest in and to that certain partnership known as 'L & L Investments,' a partnership between S. E. Lanier, Sr., Houston, Texas, and S. E. Lanier, Jr., Austin, Texas."

The instrument does not reflect the date of its execution. The only date shown on it is the handwritten date "September 2, 1977," located in a box designated for showing the date of filing with the office of the Secretary of State. Hairston testified that this UCC-1 form was executed by Lanier, Sr. on July 1, 1976, simultaneously with the execution of the note and the deeds of trust. His explanation for the delay of filing with the Secretary of State was simply oversight on the part of Bank. Lanier, Sr. denied that he executed the UCC-1 form in question. He testified that sometime prior to the transaction on July 1, 1976, he signed two UCC-1 forms in blank when W. R. "Bubba" Fitzpatrick, Bank's vice-president with whom Lanier, Sr. was then dealing on transactions with Bank, "shoved them out to me one time and said, 'Here. Sign these. They don't mean a damned thing, but I've got to have them.' I signed two of them in blank." The implication of Lanier, Sr.'s testimony was that the UCC-1 form in question was one of the two signed by him in blank which was filled in by Bank and signed by Hairston sometime after July 1, 1976. Hairston testified that the reason he was dealing with Lanier, Sr. on July 1, 1976, was because Fitzpatrick was no longer with Bank at that time.

Hairston acknowledged in his testimony that on July 1, 1976, Bank's records on Lanier, Sr. reflected that L & L Investments was a partnership, that Lanier, Jr. and Lanier, Sr. were the partners, and that the partnership owned the apartment complex, land and improvements, in Austin, Texas, but he stated that he thought at the time that Lanier, Sr., in a telephone call to Lanier, Jr., had secured Lanier, Jr.'s oral consent for execution of the deed of trust on the partnership property. Lanier, Sr. and Lanier, Jr. denied any such telephone call; and they denied that Lanier, Jr. had agreed to the conveyance. Lanier, Jr. testified that he first learned of the deeds of trust on both the Bastrop County properties and the partnership property in December, 1976. He said that he then contacted Don Stocking at Bank both by telephone and by letter in December, 1976; that he told Stocking that the deed of trust on the partnership property was in violation of the partnership agreement; and that he sought without success to have Bank release the deed of trust on the partnership property.

On March 15, 1977, Lanier, Jr. and Lanier, Sr. entered into an oral agreement under which Lanier, Sr. agreed to sell, and Lanier, Jr. agreed to buy, Lanier, Sr.'s interest in the partnership. Pursuant to that agreement they caused the following instruments to be filed in the Assumed Name Records of Travis County in March, 1977:

1. A "Certificate of Withdrawal From Business Operating Under Assumed Name" executed by Lanier, Sr. certifying that he "did dispose of his interest in [L & L Investment Company] to Sidney E. Lanier, Jr., on the 18th day of March, 1977, and now desires and hereby does withdraw from said business, and hereby gives notice that he is no longer connected with or interested in said business."

2. An "Assumed Name Certificate" executed by Lanier, Jr. certifying that "the name under which business is conducted and transacted is L & L Investment Company" and that "the true and real full names of the persons conducting or transacting such business are as follows: Sidney E. Lanier, Jr."

Although this lawsuit began in April, 1977, when Lanier, Jr., individually, filed suit against Bank to have the deed of trust on Lot A, Pecan Park Addition set aside, the suit as it is presently before us was initiated on August 11, 1977, by way of an amended petition in which Lanier, Jr. and L & L Investment Company sued Bank and Lanier, Sr. to have the deed of trust set aside. Plaintiffs alleged in the amended petition that "L & L Investment Company is a partnership and the owner in fee simple title" of Lot A, Pecan Park Addition: that on July 1, 1976, Lanier, Sr. purported to make a deed of trust conveying the property to Don Stocking for the benefit of Bank; that Bank caused the deed of trust to be recorded; that the deed of trust "creates no title or just claim to any of the above described property because it was given in contravention of the Texas Uniform Partnership Act, Sections 9(3)(a) and 25(2)(b)" and therefore did not effect any title or interest in Bank; and that the recorded instrument creates a cloud on the partnership's title. Plaintiffs prayed for judgment declaring the deed of trust to be of no force and effect, and for cancellation of the instrument. This amended petition was plaintiffs' basic pleading on the trial. Lanier, Sr. answered with a general denial. We shall notice Bank's answer, later.

Meanwhile, Lanier, Sr. had defaulted on payment of his note to Bank. Bank caused the personal property securing the note to be sold, and credited the proceeds to the note. Bank also foreclosed on the Bastrop County property under the deed of trust thereon. It bought Lanier, Sr.'s interest in the Bastrop County property at the foreclosure sale for $500.00, and credited that sum to the note. Bank also began foreclosure proceedings on Lot A, Pecan Park Addition on August 17, 1977, under the deed of trust given thereon by Lanier, Sr., but on plaintiffs' application Bank was enjoined from proceeding with the sale pending the outcome of this suit.

On November 9, 1977, Lanier, Jr. and Lanier, Sr. executed a lengthy written purchase/sale agreement under which Lanier, Jr. purchased Lanier, Sr.'s interest in the partnership for the consideration of $34,800. In the agreement the parties first acknowledged that they "have been and are partners in the L & L Investment Company, a partnership" under their partnership agreement dated May 15, 1974, and then agreed in numbered paragraphs as follows:

1. That Lanier, Sr. "does hereby" irrevocably assign and transfer all of his right, title and interest in the partnership to Lanier, Jr. in consideration of the payment of $34,800.00, to be represented by Lanier, Jr.'s promissory note payable to Lanier, Sr. in 180 equal monthly installments, and the further consideration of the assumption by Lanier, Jr. of all of the partnership liabilities attributable to Lanier, Sr.

2. That as of the date of the agreement the partnership had total liabilities of $216,000.00; that Lanier, Sr.'s share,

attributable to Lanier, Jr. under the agreement, was $108,300.00; and that accordingly, the sale price of Lanier, Sr.'s interest was $143,110.00, being the sum of such liabilities and the cash consideration.

3. That the $143,110.00 sale and purchase price would be allocated to Lanier, Sr.'s interest in the partnership assets as follows:

| | |
|---|---|
| Buildings | $107,332.00 |
| Real Estate | 28,620.00 |
| Furniture | 7,158.00 |
| Total Sale Price | $143,110.00 |

.     .     .     .     .

6. That the agreement was binding upon and inured to the benefit of the parties, their heirs, executors, administrators, assigns and legal representatives.

7. That it was "expressly agreed and understood" by the parties that on July 1, 1976, Lanier, Sr. executed the deed of trust to Don Stocking as Trustee conveying "certain specific real property of the partnership" for the benefit of Bank to secure an individual debt of Lanier, Sr.; that the deed of trust was contrary to and unauthorized by the partnership agreement and by Lanier, Jr.; that Lanier, Jr. and the partnership had filed suit against Bank to have the trust deed removed as a cloud on the title of the partnership's property; that Bank had filed an answer claiming the deed of trust was an assignment of Lanier, Sr.'s interest in the partnership; that, under the circumstances, all payments made by Lanier, Jr. on the $34,800.00 note would be held in escrow by Capital National Bank until the lawsuit and the claims by Bank were judicially determined; that should the lawsuit result in a determination that the deed of trust effected an assignment of Lanier, Sr.'s interest in the partnership to Bank, then this agreement would be null and void in all of its particulars, and all payments made by Lanier, Jr.

on the $34,800.00 note would be returned to him; and that all attorney's fees incurred by Lanier, Jr. in the prosecution of this suit on behalf of the partnership would be paid by Lanier, Sr. to Lanier, Jr. by credit against the $34,800.00 note given by Lanier, Jr. for the purchase of Lanier, Sr.'s interest in the partnership.

Lanier, Jr. testified that he and Lanier, Sr. delayed reducing their oral purchase/sale agreement (made in March, 1977) until November, 1977, upon the advice of his attorney, and also because they needed the time to determine the value of the partnership property and Lanier, Sr.'s interest, including the securing of a professional appraisal.

The record reflects that Bank sued Lanier, Sr. in the District Court of Harris County for the balance due on Lanier, Sr.'s $222,000.00 note to Bank; and that on May 23, 1978, an agreed judgment was rendered in favor of Bank for $65,000.00 in that case. That judgment became final.

In the case now before us Bank's trial pleading was its Second Amended Original Answer And Countersuit And Cross Action, filed November 27, 1978. This pleading set up the following pertinent claims by Bank:

1. That the partnership was dissolved by Lanier, Jr. and Lanier, Sr. when they entered into the oral purchase/sale agreement on March 15, 1977; that upon the dissolution, legal and equitable title to Lot A, Pecan Park Addition, immediately vested in Lanier, Jr. and Lanier, Sr. as tenants in common; and that at that time, the deed of trust executed by Lanier, Sr. "became a valid enforceable instrument effectively conveying his undivided one-half interest in the property to Don Stocking, Trustee for [Bank]" under the doctrine of after-acquired title.

2. That the deed of trust effected an assignment to Bank of Lanier, Sr.'s interest in the partnership, and therefore, under the provisions of Section 27 of the Texas Uniform Partnership

Act, Bank was entitled to receive all of Lanier, Sr.'s interest in the partnership "upon the dissolution of the Partnership on March 15, 1977."

3. That although the partnership was dissolved on March 15, 1977, "the affairs winding up the Partnership have not been completed in accordance with Sections 38(1) and 40 of the Texas Uniform Partnership Act"; that, under those sections of the Partnership Act, upon dissolution, Lanier, Sr. was entitled to receive "in cash" any surplus funds after payment of the partnership debts; and that Bank, as holder of the deed of trust and as a judgment creditor of Lanier, Sr. "is entitled to be placed in the same position" as Lanier, Sr., upon the dissolution, and accordingly is entitled to a "Charging Order" for the amount of the $65,000.00 judgment against the assets of the partnership.

4. That the purchase/sale agreement dated November 9, 1977, between Lanier, Jr. and Lanier, Sr. for $34,800.00 to be paid over a period of 180 months was an attempt by them to circumvent the provisions of Section 38(1) of the Partnership Act; that the agreement was made to delay, hinder and defraud Bank of its interest in the partnership assets; and that because the consideration of $34,800.00 was less than a fair and full consideration for Lanier, Sr.'s one-half interest in the partnership the agreement was void as to Bank under the provisions of sections 24.02 and 24.03 of the Texas Business and Commerce Code.

Bank's pleadings were duly answered by the other parties.

The case was tried to the court without a jury. Judgment was rendered as follows:

1. The deed of trust executed by Lanier, Sr. to Stocking on Lot A, Pecan Park Addition was set aside and declared to be of no force and effect.

2. Bank was granted a Charging Order on Lanier, Sr.'s interest in the November 9, 1977 agreement; and it was ordered that all payments made and to be made by Lanier, Jr., due to Lanier, Sr. under the agreement and the note recited therein, would be delivered to Bank.

3. All other relief sought by the parties was expressly denied.

In response to Bank's motion for findings of fact and conclusions of law, the court filed the following in support of the judgment:

"FINDINGS OF FACT

"1. That L & L INVESTMENT COMPANY is a Texas partnership formed by oral agreement between SIDNEY E. LANIER, SR. and SIDNEY E. LANIER, JR. on or about February 1, 1972.

"2. That the only partners of L & L INVESTMENT COMPANY from its inception until termination were SIDNEY E. LANIER, JR. and SIDNEY E. LANIER, SR.

"3. A written partnership agreement was entered into between SIDNEY E. LANIER, JR. and SIDNEY E. LANIER, SR. on May 15, 1974 which sets forth the terms of the partnership of L & L INVESTMENT COMPANY as between the partners.

"4. The partnership agreement prohibits assignment of any partner's interest in the partnership without the written consent of the other partner.

"5. SIDNEY E. LANIER, JR. did not consent to an assignment by SIDNEY E. LANIER, SR. of his interest in L & L INVESTMENT COMPANY to SPRING WOODS BANK OF HOUSTON either in writing or otherwise.

"6. On July 1, 1976, SIDNEY E. LANIER, SR. executed an instrument, which subsequently on July 12, 1976 was recorded in Vol. 5515, Page 2052 of the Deed of Trust Records of Travis County, Texas. This instrument is a Deed of Trust which conveys property described as 'all of that certain lot and parcel of land known as Lot A in Pecan Park Addition, Travis County, Texas, according to

the map or plat thereof recorded in the map records of Travis County, Texas, together with all improvements located thereon' to Don Stocking for the benefit of SPRING WOODS BANK OF HOUSTON to secure an individual liability of SIDNEY E. LANIER, SR. to the SPRING WOODS BANK OF HOUSTON.

"7. The correct legal description of such property is Lot A, Pecan Park Addition, a re-subdivision of Lots 5, 6, and 7 Block 4, Hyde Park Annex, Travis County, Texas, according to the map or plat of said re-subdivision recorded in Vol. 61, Page 41 of the Plat Records, Travis County, Texas (hereinafter referred to as Lot A, Pecan Park).

"8. That at all times from on or about May 15, 1974 to the time of trial, record and legal title to Lot A, Pecan Park was in L & L INVESTMENT COMPANY.

"9. Lot A, Pecan Park is an asset of L & L INVESTMENT COMPANY.

"10. SIDNEY E. LANIER, JR. did not consent to the execution of the Deed of Trust by SIDNEY E. LANIER, SR. dated July 1, 1976 which conveyed Lot A, Pecan Park to Don Stocking, Trustee.

"11. SIDNEY E. LANIER, SR. did not have the authority or consent of SIDNEY E. LANIER, JR. to execute and deliver the Deed of Trust on Lot A, Pecan Park to SPRING WOODS BANK OF HOUSTON which became of record in Vol. 5515, Page 2052 of the Deed of Trust records of Travis County, Texas.

"12. On July 1, 1976, SPRING WOODS BANK OF HOUSTON knew that Lot A, Pecan Park was an asset of L & L INVESTMENT COMPANY.

"13. L & L INVESTMENT COMPANY was dissolved on or about March 15, 1977.

"14. L & L INVESTMENT COMPANY was terminated on November 9, 1977 by a written agreement between the partners and the terms of the termination are as set out in such written agreement which is Bank's Exhibit # 3 of the records of this trial.

"15. As a result of such termination, SIDNEY E. LANIER, JR. purchased the interest of SIDNEY E. LANIER, SR. in L & L INVESTMENT COMPANY for the purchase price of THIRTY FOUR THOUSAND EIGHT HUNDRED AND NO/100 DOLLARS ($34,800.00) to be paid as set out in Bank's Exhibit # 3 and subject to all terms and conditions of such agreement.

"16. After November 9, 1977, SIDNEY E. LANIER, SR. had no right, title or interest in or to L & L INVESTMENT COMPANY or its assets.

"17. The Deed of Trust recorded in Vol. 5515, Page 2052 of the Deed of Trust Records of Travis County, Texas executed by SIDNEY E. LANIER, SR. to Don Stocking is not an assignment of SIDNEY E. LANIER, SR.'s interest in L & L INVESTMENT COMPANY or its assets to SPRING WOODS BANK OF HOUSTON or Don Stocking.

"18. The only asset of L & L INVESTMENT COMPANY on November 9, 1977 was Lot A, Pecan Park.

"19. The fair market value of Lot A, Pecan Park on November 9, 1977 was TWO HUNDRED NINETY ONE THOUSAND AND NO/100 DOLLARS ($291,-000.00).

"20. The purchase price of $34,800.00 paid by SIDNEY E. LANIER, JR. to SIDNEY E. LANIER, SR. was a full, fair and adequate consideration for SIDNEY E. LANIER, SR.'s interest in L & L INVESTMENT COMPANY.

"21. The execution and delivery of the Deed of Trust conveying Lot A, Pecan Park to Don Stocking by SIDNEY E. LANIER, SR. was a wrongful act by the terms of the partnership agreement of L & L INVESTMENT COMPANY and such wrongful act was the cause of the dissolution and termination of L & L INVESTMENT COMPANY partnership.

"22. SIDNEY E. LANIER, JR. is entitled to damages against SIDNEY E. LANIER, SR. for such wrongful act as is provided in Vernon's Annotated Texas Statutes Section 6132(b) [art. 6132b] and

Section 38(2)(a)(II) and such damages were considered by SIDNEY E. LANIER, JR. and SIDNEY E. LANIER, SR. in arriving at the purchase price of $34,-800.00 for SIDNEY E. LANIER, SR.'s interest in L & L INVESTMENT COMPANY.

"23. The provision in the November 9, 1977 agreement (Bank's Exhibit # 3) is reasonable in its provisions for the payment of the attorney's fees by SIDNEY E. LANIER, SR.

"24. L & L INVESTMENT COMPANY was not at any time indebted to Defendant, SPRING WOODS BANK OF HOUSTON, nor did it at any time have any banking relationship with SPRING WOODS BANK OF HOUSTON.

"25. The termination of L & L INVESTMENT COMPANY and the conveyance by SIDNEY E. LANIER, SR. to SIDNEY E. LANIER, JR. of his interest in L & L INVESTMENT COMPANY was not with the intent by either party to hinder, delay or defraud the SPRING WOODS BANK OF HOUSTON from collection of any sums owed to the SPRING WOODS BANK OF HOUSTON by SIDNEY E. LANIER, SR.

"26. Defendant and Counter-plaintiff SPRING WOODS BANK OF HOUSTON has a valid and enforceable judgment against SIDNEY E. LANIER, SR. in the amount of $65,000.00 more or less.

"27. Defendant and Counter-plaintiff SPRING WOODS BANK OF HOUSTON is entitled to a charging order against all of SIDNEY E. LANIER, SR.'s right, title and interest in and to the proceeds of all payments made pursuant to the November 9, 1977 agreement (Bank's Exhibit # 3) between SIDNEY E. LANIER, SR. and SIDNEY E. LANIER, JR."

## "CONCLUSIONS OF LAW

"1. The Deed of Trust executed by SIDNEY E. LANIER, SR. conveying Lot A, Pecan Park Addition, Travis County, Texas (the correct legal description being Lot A, Pecan Park Addition a re-subdivision of Lots 5, 6 and 7, Block 4, Hyde Park Annex, Travis County, Texas, according to the map or plat of said re-subdivision recorded in Vol. 61, Page 41 of the Plat Records, Travis County, Texas) to Don Stocking for the benefit of the SPRING WOODS BANK OF HOUSTON and recorded in Vol. 5515, Page 2052 of the Deed of Trust Records, Travis County, Texas, is void ab initio, and is of no force or effect and creates no right, title or interest in or to such property in SPRING WOODS BANK OF HOUSTON and was executed in contravention of the Texas Uniform Partnership Act, Section 9(3)(a) and Section 25(2)(b).

"2. The Deed of Trust executed by SIDNEY E. LANIER, SR. and described in conclusion of law # 1 above is not effective as an assignment of SIDNEY E. LANIER, SR.'s partnership interest in L & L INVESTMENT COMPANY or in the assets of L & L INVESTMENT COMPANY to the SPRING WOODS BANK OF HOUSTON.

"3. The term 'dissolution' as such term is used in the Texas Uniform Partnership Act (Vernon's Annotated Texas Statutes Art. 6132(b) Sec. 29 [Art. 6132b, § 29]) means an act that changes the legal relationship of the partners in a partnership and not a termination either of the partnership or the partnership business. Even if the business is to be discontinued by dissolution, the partnership continues to exist for the purposes of winding-up. See Section 30 of the Uniform Partnership Act V.A.T.S. Art. 6132b(30) [Art. 6132b, § 30].

"4. The term 'termination' of a partnership as such term is used in the Texas Uniform Partnership Act (V.A.T.S. Art. 6132b) means the completion of the process of winding-up the partnership and represents the completion of the liquidation of the partnership.

"5. Title to partnership property remains in the partnership from the time of the dissolution until termination of the partnership.

"6. L & L INVESTMENT COMPANY was dissolved on March 15, 1977 and

terminated on November 9, 1977 by agreement between the partners SIDNEY E. LANIER, JR. and SIDNEY E. LANIER, SR. which is Bank's Exhibit # 3 of the record of this cause.

"7. SIDNEY E. LANIER, JR. has right, title and interest to all assets of L & L INVESTMENT COMPANY free and clear from any claim of the Defendant, SPRING WOODS BANK OF HOUSTON.

"8. Counter-plaintiffs, SPRING WOODS BANK OF HOUSTON is entitled to all of the right, title and interest of SIDNEY E. LANIER, SR. in the proceeds of any and all payments made pursuant to the November 9, 1977 agreement (Bank's Exhibit # 3 between SIDNEY E. LANIER, SR. and SIDNEY E. LANIER, JR.; the promissory note recited in said November 9, 1977 agreement; and all future payments pursuant thereto at the time specified therein."

"9. Defendant and Counter-plaintiff, SPRING WOODS BANK OF HOUSTON has no claim for which a judgment can be granted against Plaintiff, SIDNEY E. LANIER, JR. and L & L INVESTMENT COMPANY.

"10. Title to Lot A, Pecan Park did not at any time vest in SIDNEY E. LANIER, SR. but at all times from the formation of the partnership until November 9, 1977 remained in L & L INVESTMENT COMPANY and therefore the Deed of Trust referred to herein did not at any time convey any right, title or interest in or to Lot A, Pecan Park to SPRING WOODS BANK OF HOUSTON."

None of the parties requested additional findings or conclusions.

Bank is the only appealing party. In five points of error, Bank presents the following assignments for reversal of the judgment:

Points 1 and 2: The court erred in setting aside the July 1, 1976, deed of trust on Lot A, Pecan Park Addition, for the reasons that the partnership was dissolved and terminated by the oral purchase/sale agreement on March 15, 1977, or in any event the partnership was terminated by the written purchase/sale agreement on November 9, 1977, and immediately upon dissolution and termination an undivided one-half interest in the partnership asset Lot A, Pecan Park Addition, vested in each of the partners as tenants in common, and at that moment the deed of trust became a valid conveyance of Lanier, Sr.'s one-half interest to Bank under the doctrine of after-acquired title.

Points 3 and 4: The court erred in setting aside the deed of trust and in failing to set aside the written purchase/sale agreement dated November 9, 1977, for the reason that the deed of trust was a valid assignment by Lanier, Sr. of his interest in the partnership, under the provisions of Section 27 of the Texas Uniform Partnership Act, and the deed of trust was prior to the November 9, 1977, agreement.

Point 5: The court erred in failing to set aside the written purchase/sale agreement dated November 9, 1977, for the reason that the consideration of $34,800.00 was an inadequate consideration in violation of Section 24.03 of the Texas Business and Commerce Code.

We overrule those contentions, and, accordingly, we affirm the judgment.

The Texas Uniform Partnership Act is codified as Vernon's Tex.Civ.St. article 6132b. The following provisions of the Act are pertinent to our parties' contentions:

§ 8(3). Any estate in real property may be acquired in the partnership name. Title so acquired can be conveyed only in the partnership name.

§ 24. The property rights of a partner are (1) his rights in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management.

§ 25. (1) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.

(2) The incidents of this tenancy are such that:

.    .    .    .    .

(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of rights of all the partners in the same property.

§ 27. (1) A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs; it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled . . .

(2) In case of a dissolution of the partnership, the assignee is entitled to receive his assignor's interest.

§ 29. The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.

§ 30. On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.

§ 38(1) When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his co-partners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners . . .

(2) When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows:

(a) Each partner who has not caused dissolution wrongfully shall have,

(I) All the rights specified in paragraph (1) of this section, and

(II) The right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement.

. . . . .

(c) A partner who has caused the dissolution wrongfully shall have:

. . . . .

(II) . . . [T]he right as against his co-partners . . . to have the value of his interest in the partnership, less any damages caused to his co-partners by the dissolution, ascertained and paid to him in cash.

§ 40. (This section sets forth the rules to be observed in settling accounts between the partners after dissolution).

Bank has not challenged any of the court's findings of fact as being without sufficient evidentiary support in the record, other than findings 19, 20, and 22 (relating to the consideration paid by Lanier, Jr. for the purchase of Lanier, Sr.'s partnership interest) which we shall notice later. Specifically, Bank has not challenged the findings (numbers 5, 10, and 11) that Lanier, Jr. did not consent to the execution of the deed of trust on the partnership property to Bank by Lanier, Sr. to Bank, nor consent to an assignment by Lanier, Sr. of his interest in the partnership to Bank. Findings of fact which are not challenged by proper assignments of error on appeal are binding on the parties and the reviewing court. *Zelios v. City of Dallas*, 568 S.W.2d 173, 175 (Tex.Civ.App.—Dallas 1978, writ ref'd n. r. e.); *Lovejoy v. Lillie*, 569 S.W.2d 501, 504 (Tex.Civ.App.—Tyler 1978, writ ref'd n. r. e.); *Texas State Board of Pharmacy v. Gibson's Discount Center, Inc.*, 541 S.W.2d 884, 886 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.).

Under the provisions of § 25(2)(b) of the Partnership Act, supra, without the consent and joinder of Lanier, Jr. to its execution, the trust deed in question did not effect an assignment or conveyance to Bank of the specific partnership property, Lot A, Pecan Park Addition. Bank tacitly concedes this, but it asserts that when the partnership was dissolved or terminated it acquired Lanier, Sr.'s one-half interest in

Lot A, Pecan Park Addition, under the doctrine of after-acquired title. The problem with this contention is that title to the property was never in Lanier, Sr. Title was at all times in the partnership. Whether the partnership was dissolved and terminated on March 15, 1977, or November 9, 1977 (the court found and concluded without challenge from Bank that the partnership was dissolved on March 15, 1977, and that it was terminated on November 9, 1977), title to the specific partnership property Lot A, Pecan Park Addition, remained in the partnership until dissolution and termination. Under the undisputed facts of our case, the dissolution and final termination occurred by reason of an agreement of the two partners wherein the interest of one, which was personal property, was transferred to the other; and there was no title to specific partnership property vested in either individual partner. See, *Sherk v. First Nat. Bank of Hereford*, 206 S.W. 507, 509 (Tex. Com.App.1918, jdgmt. approved); *Littleton v. Littleton*, 341 S.W.2d 484, 488 (Tex.Civ. App.—Houston 1960, writ ref'd n. r. e.). Under those circumstances the doctrine of after-acquired title was never applicable.

■ Bank next asserts that the deed of trust effected an assignment to it of Lanier, Sr.'s interest in the partnership. In finding of fact number 17, supra, the trial court expressly and directly found contrary to that contention. Again, Bank has not challenged that finding as not being supported by the evidence. Rather, Bank contends that whether or not the deed of trust was an assignment is a question of law, not of fact, and challenges as incorrect the court's conclusion of law number 2, that the trust deed was not an assignment of Lanier, Sr.'s partnership interest. We do not agree with that contention. In support of its position that the question of assignment is one of law, Bank cites *Sherk v. First Nat. Bank of Hereford*, supra; *In re Decker*, 295 F.Supp. 501 (W.D.Va.1969); and *Shapiro v. United States*, 83 F.Supp. 375 (D.Minn.1949). These authorities do not support Bank's position, but show, oppositely, that the intent of the parties is controlling on the question of an assignment or not of the partner-

debtor's partnership interest to the creditor. Clearly, as stated in *Decker*, "[t]he intent of the parties is the controlling factor." In our case, the intent element was a disputed issue upon which the court did not make an express finding and upon which no finding was requested by the parties. The evidence we have recited and its inferences amply support the omitted, unrequested finding that neither Lanier, Sr. nor Bank intended the deed of trust to be an assignment of Lanier, Sr.'s interest in the partnership; and, in connection with the court's express finding number 17, the omitted finding is "supplied by presumption in support of the judgment." Rule 299, Vernon's Tex.Rules Civ.Proc.; *F. R. Hernandez Const. v. Nat. Bk. of Commerce*, (Tex.1979) 578 S.W.2d 675, 678; *Marlow v. Medlin*, 558 S.W.2d 933, 938 (Tex.Civ.App.—Waco 1977, no writ).

■ Bank also argues that the deed of trust and the UCC-1 form, in combination, as a matter of law constitute an assignment to Bank of Lanier, Sr.'s interest in the partnership. Bank did not plead the combination of the instruments for relief, but pleaded only the deed of trust. A basis of recovery may not be raised for the first time on appeal for reversal of the judgment. 4 Tex.Jur.2d 54, Appeal & Error—Civil Cases, § 695. Moreover, again, the evidence and its inferences are sufficient to support omitted, unrequested findings by the trial court against Bank on the combination theory under the authorities cited immediately above.

■ V.T.C.A., Bus. & C. § 24.03 provides that a transfer of property by a debtor is void with respect to an existing creditor if the transfer is not made for fair consideration, unless at the time of transfer the debtor has enough additional property in this state subject to execution to pay all of his existing debts. It is undisputed in our record that Lanier, Sr. did not (and does not) have additional property in Texas subject to execution sufficient to pay off Bank when he sold his interest in the partnership to Lanier, Jr. However, the effect of the court's findings of fact 19, 20 and 22 is that

the consideration of $34,800.00 paid by Lanier, Jr. for Lanier, Sr.'s interest in the partnership was a fair consideration. Under its point of error number 5, Bank argues that findings 19, 20 and 22 are against the great weight and preponderance of the evidence. Although those contentions are not properly supported by individual assignments of error, we have nevertheless given them full consideration. In the light of the whole record, and without further detailing of the evidence, we hold they are without merit.

Bank's points and contentions are overruled. The judgment is affirmed.